**In re the MARRIAGE OF Kenneth DeMoine GARRETT and Joanne Josephine Garrett.**

**Kenneth DeMoine Garrett, Petitioner-Respondent,**

and

**Joanne Josephine Garrett, Respondent-Appellant.**

No. 12853.

Missouri Court of Appeals,
Southern District,
Division One.

June 21, 1983.

Motion for Rehearing or to Transfer to Supreme Court Denied July 13, 1983.

Application to Transfer Denied
Aug. 16, 1983.

James F. DeNeen, Joplin, for petitioner-respondent.

Michael D. Talley, Thomas and Talley, Joplin, for respondent-appellant.

GREENE, Chief Judge.

Respondent, Joanne Garrett, appeals from that portion of the trial court's judgment in a dissolution of marriage case which declared the retirement benefit of $625 per month of petitioner, Kenneth Garrett, from the Teamsters Health and Welfare Fund, to be nonmarital property. Joanne contends that such declaration was erroneous, and caused a grossly disproportionate division of the marital property.

The Garretts were married 18 years. Kenneth had been employed as a truck driver by Yellow Freight Systems for 23 years, and, effective October 19, 1981, had retired for reason of physical disability. Garrett had not contributed to the pension fund, and had not exercised an option that would give his spouse survivor's benefits. The pension benefit was contingent in that it only applied during the life of Garrett, had no cash value, and was subject to di-

vestment if he resumed employment as a truck driver.

Evidence was heard in the case on October 29, 1981, but judgment was delayed until March 16, 1982, primarily because of the mutual desire of the parties and the trial court to obtain guidance as to whether pension plans were marital property from an anticipated Supreme Court of Missouri opinion on the subject. When such opinion was not immediately forthcoming, the trial court entered judgment on the issue, the pertinent portion of which states:

"The pension plan has no cash surrender value and is contingent upon the petitioner living and upon his demise, the monthly payments are terminated. Said pension payments can further be terminated if petitioner becomes employed again as a teamster although the pension would be viable at the time petitioner makes a final retirement. Petitioner has not exercised his option for spousal survival benefits which would allow payments to continue to petitioner's spouse after petitioner's death. The Court finds that this pension plan is non-marital property and is the sole, separate property of petitioner. The Court has further taken into consideration in dividing the marital property the petitioner's income under this pension plan of $625 per month as a statutory factor in dividing marital property."

On August 2, 1982, the Supreme Court of Missouri, en banc, handed down the opinion in question. *Kuchta v. Kuchta,* 636 S.W.2d 663 (Mo. banc 1982).[1]

Mrs. Garrett's principal argument here is that the trial court erroneously declared the law by finding that her husband's pension rights were nonmarital property, and that such finding was prejudicial to her for the reason that if such pension right had been declared to be marital property, she had an

---

1. In outlining the legal history of the case, the supreme court said,

"After a Divisional Opinion was filed in the Western District of the Court of Appeals on September 18, 1980, modifying the trial court's decree, this Court approved the applications of both parties to transfer the cause

to this Court. After arguments and submission, an opinion of this Court was filed on September 8, 1981. Thereafter, a motion for rehearing was sustained and the opinion as filed was withdrawn and further arguments were heard on January 13, 1982." 636 S.W.2d at 663 n. 1.

interest in it, and was, therefore, entitled to a larger percentage of the marital property than she received in the trial court's judgment.[2]

*Kuchta* holds that the trial court in that case properly considered "pension benefits" as marital property. However, the opinion goes on to say that it is not mandatory that pension benefits be divided between spouses where other assets are available, and also states that "whether or not present or prospective pension rights are to be classified as marital property is no longer of primary concern, but rather the manner by which the trial court can treat the same in seeking to reach a fair and equitable division thereof if necessary to comply with § 452.330."[3] The statute in question provides, in part, that:

"[T]he court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage."

Here, the judgment recited that the trial court, in dividing the marital property, took into consideration as a statutory factor the fact that Mr. Garrett would receive $625 a month from his pension plan. This recitation is supported by the record.

The trial court here, in its findings of fact and conclusions of law, found that while both parties had contributed financially to the acquisition of their marital property, the financial contribution of the husband outweighed that of the wife (for example: $26,000 for the husband versus $9,450.08 for the wife for the year 1980). It found that the $625 a month pension benefit was Garrett's sole source of income, and out of that amount ordered him to pay $55 per week, or an average of $238 a month as support for the two minor children of the parties. It awarded the family home, in which there was an equity balance of $14,500, to Mrs. Garrett, giving her the right to live in and possess the home until the youngest child, now age 15, was 21 or was emancipated, at which time the home was to be sold and the net proceeds divided between the parties. It gave Mrs. Garrett marital property of greater monetary value than that awarded Mr. Garrett, even though her economic contribution to acquiring that property was much less than that of her husband.[4] The trial court found that the conduct of the parties was not a factor, as neither party alleged or proved any gross misconduct on the part of the other.

At the time of the judgment in the present case, the trial court did not have the benefit of *Kuchta*. At that time, there was no clear consensus in cases arising under the Dissolution of Marriage Act as to precisely when pension rights or benefits were to be considered as what is now called marital property. It does not appear, how-

---

2. Because the parties had been married for 18 of the 23 years that formed the basis for the pension benefit, Mrs. Garrett claimed a marital interest in 78% of the pension rights. She asked either that 78% of the present discounted value of husband's anticipated lifetime payments from the plan be included in the marital property and the total then divided, or that a fixed share, such as one-half of 78%, of each month's pension payment be awarded to her.

3. The statutory reference is to RSMo 1978 (as amended by Laws 1981).

4. Aside from the marital home, the remainder of the marital property was apportioned so that Mr. Garrett received items valued by the court at $11,390, and Mrs. Garrett received items valued at $13,602. The pension deemed by the trial court to be the separate property of husband was the only property found nonmarital as to either party.

ever, that the trial court's decision was out of step with the authority then available.[5]

Both parties in the present case seem to urge that the ruling in *Kuchta* on the principle with which we are concerned (the declaration that pension rights and benefits are marital property) is of retrospective application. While we are uncertain of the validity of that assertion, we do not consider it necessary for us to directly rule the matter.[6] Even if the trial court had been clairvoyant, or lucky, in forecasting what *Kuchta* would hold when handed down, and had declared the pension benefits in dispute here to be marital property, it would have been under no obligation, even under *Kuchta,* to divide those benefits between the parties.[7] It only had to fairly consider, as it did, what effect the awarding of the pension benefits to the husband would have on the economic circumstances of the parties, which is one of the elements to consider in dividing marital property. Actually, the benefits of Mr. Garrett's plan seem best viewed as anticipated income rather than as a present property interest.

■ Also, *Kuchta* places far greater premium on achieving an overall fair division under § 452.330 than on the denomination of pension rights as marital property. Indeed, where benefits are subject to loss by some contingency, *Kuchta* expresses the belief the needs of the nonworking spouse may best be served by the receipt of less contingent assets. 636 S.W.2d at 666. Thus, the court below did nothing it would have been prevented from doing in *Kuchta* had been clearly applicable and followed by the court. Furthermore, the mere erroneous declaration of what is or is not marital property, where the decree is nonetheless fair, will not require a reversal. *Puckett v. Puckett,* 632 S.W.2d 83 (Mo.App.1982).

■ Viewed in this light, the trial court's division of property was supported by substantial evidence, was not against the weight of the evidence, and was not based on any erroneous declaration or application

**5.** Until *Kuchta,* the appellate courts generally had viewed a pension as being marital property only if the earning party's interest was of some sufficient level of certainty. There was particular emphasis on whether there existed a fully earned fund not subject to divestment. For cases declaring particular pensions marital property, see *Daffin v. Daffin,* 567 S.W.2d 672 (Mo.App.1978), and *In re Marriage of Powers,* 527 S.W.2d 949 (Mo.App.1975). In other cases, the evidence of the nature of the party's interest was too uncertain to determine the issue. *Anspach v. Anspach,* 557 S.W.2d 3 (Mo.App. 1977). Where death would terminate all rights, a plan with no cash value was held to involve a scheme of disposition which was speculative and not conducive to computation, and thus was not marital property. *In re Marriage of Faulkner,* 582 S.W.2d 292 (Mo.App.1979). These cases all cite *Robbins v. Robbins,* 463 S.W.2d 876 (Mo.1971), which held that a husband's pension rights were not assets for purposes of an alimony award, even though technically vested, because determining a present value would be "purely speculative" and the pension was subject to divesting contingencies.

**6.** *Kuchta,* as a new declaration of law, expressly overruled *Robbins v. Robbins,* 463 S.W.2d 876 (Mo.1971) (a case predating the Dissolution of Marriage Act, see footnote 5, supra) to the extent the latter supported declaring some pension rights as nonmarital. 636 S.W.2d at 665. Substantive, rather than procedural, changes in the law by judicial decision is a condition often said to result in retrospective application of the new rule of law. *State v. Walker,* 616 S.W.2d 48, 49[1] (Mo. banc 1981); *Dietz v. Humphreys,* 507 S.W.2d 389, 392[1] (Mo.1974); *Bethell v. Porter,* 595 S.W.2d 369, 375[1] (Mo.App.1980). This court has said such principle will apply even though counsel and the trial court could not have been aware of the new rule at the time they acted. *Skidmore v. Back,* 512 S.W.2d 223, 226[1] (Mo.App.1974). However, a substantive change may be limited to prospective application only. *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599, 600[4] (Mo. banc 1969); *Dietz v. Humphreys,* supra, 507 S.W.2d at 392[2]; *Bodard v. Culver-Stockton College,* 471 S.W.2d 253, 255[2] (Mo.1971). Significantly, it has been said to be undesirable to give retroactive effect to an overruling decision, absent compelling circumstances. *Keltner v. Keltner,* 589 S.W.2d 235, 239[7] (Mo. banc 1979). We will not pretend to second-guess the supreme court on the temporal point at which *Kuchta* is to be applied, but we discern no compelling circumstances requiring retroactivity.

**7.** In fact, *Kuchta* affirmed a circuit court decree setting apart to the husband all the rights in his retirement account, and most of the remaining assets as well. This lion's share was partially equalized by a maintenance in gross award to the wife.

of law. Assuming *Kuchta* was retrospective, the declaration of law by the trial court here that the pension benefit was not marital property, even though erroneous, was not prejudicially so. Our review, conducted under the standards of Rule 73.01(c), V.A.M.R., and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) discloses no prejudicial error.

Judgment affirmed.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.