STATE of Missouri ex rel. Arthur FRIEDMAN, A Custodian of the Records of Friedman, Weitzman & Friedman, P.C., Relator,

v.

The Honorable Richard F. PROVAZNIK, Judge of the Circuit Court of St. Louis County, Missouri, Respondent.

No. 65411.

Supreme Court of Missouri,
En Banc.

April 16, 1984.

Mary E. Davidson, Newton G. McCoy, Raymond Bruntrager, St. Louis, for relator.

Gordon L. Ankney, Clayton, for respondent.

Veryl L. Riddle, Thomas C. Walsh, St. Louis, James W. Jeans, Sr., Platte City, for amicus.

HIGGINS, Judge.

Relator, a member of a law firm formerly representing the St. Louis County Special School District, moved to quash a subpoena duces tecum issued at the request of the St. Louis County Grand Jury. The subpoena was directed to Mr. Friedman's firm in connection with an investigation of allegedly excessive legal fees purportedly charged to the Special School District. Relator asserted that the subpoena required disclosure of matters claimed to be protected by the attorney-client privilege and the work-product privilege, and that it sought

documents beyond the permissible scope of the Grand Jury's investigation. Respondent, after examining affidavits and descriptions of the types of information said to be contained in the requested materials, refused to quash the subpoena. Relator then obtained a provisional writ in prohibition from the Court of Appeals, Eastern District, preventing respondent from denying relator's motion to quash the subpoena. This Court granted transfer to determine the applicability of the attorney-client privilege to the types of materials sought by the Grand Jury in this case. The writ is quashed.

The Grand Jury's subpoena directed relator to produce certain records of the law firm, including attorneys' appointment books reflecting billings to the school district, as well as billing statements of Arthur Friedman relative to all clients. Relator asserts that the identities and confidences of many clients would be breached by the Grand Jury's examination of such appointment books and billing statements. The prosecuting attorney, on behalf of the respondent, counters that the Grand Jury needs the information sought by the subpoena in order to compare the amounts of time expended by relator's firm on matters involving the Special School District with amounts of time expended on other clients' affairs, and to aid in determining whether the firm engaged in "double billing."

The posture in which relator seeks to invoke the attorney-client privilege is unique: he does not seek to shield a client who is under grand jury investigation, nor does he seek, as one who is himself under investigation, to protect the identity of a client whose identity relates to the investigation of the attorney. He acknowledges that the clients whose identities he seeks to protect have no connection with the Grand Jury's investigation and are not themselves the subject of inquiry. He asserts nevertheless that this Court's most recent interpretation of the attorney-client privilege requires that the identities of his clients remain confidential, and that such confidentiality can only be preserved by quashing the Grand Jury's subpoena.

In *State ex rel. Great American Co. v. Smith*, 574 S.W.2d 379 (Mo. banc 1978), this Court adopted an approach to the attorney-client privilege that recognizes the confidentiality of communications between attorney and client as a fundamental societal policy, to which disclosure is the exception. In so doing the Court rejected the "Wigmore Approach," which emphasizes the fundamental societal need to have all evidence having rational probative value placed before the trier of facts in a lawsuit. *Id.* at 384. Under the facts before it, the Court determined that once a client seeks an attorney's advice, all subsequent communications by the attorney to the client should be privileged, including such advice, opinions and impressions. In holding that letters from an attorney to his client could not be discovered by an opposing party in a civil suit for vexatious refusal to pay on a fire insurance policy, the Court noted that the client's expectations of confidentiality were of primary concern. *Id.*

Examination of the privilege as asserted in this case must reflect the approach adopted in *Great American, supra:* in weighing the public's interest in an efficient and informed Grand Jury against the public's interest in the confidentiality of an attorney-client relationship, the Court must regard preservation of the societal expectation of confidentiality as a fundamental objective. But the expectation of confidentiality must in turn be viewed in the context of the factual realities of this case. The few reported cases that hold that an attorney may not be compelled to disclose the identities of his clients were decided under facts so distinctive that they are only peripherally relevant to the posture of the issues presented in this case. No court has considered the identity of a client to be privileged and immune from discovery in a Grand Jury investigation unless knowledge of the nature and purpose of the client's relationship with the attorney-witness would incriminate the client on the same charges for which the client sought legal assistance, or would demonstrate the

client's substantive involvement in the attorney's alleged misconduct. *See, e.g., In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447 (6th Cir.1983); *In re Grand Jury Witness (Salas and Waxman),* 695 F.2d 359 (9th Cir.1982); *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). Thus, although *Great American, supra,* provides a conceptual approach to the issues in this case, it does not dictate a particular result. *Great American* was a civil suit between private parties; this case involves a Grand Jury's investigation. Precisely how the fundamental objective of confidentiality is best served must reflect the peculiarities of the case as presented.

■ All that is known about the clients whose identities would be revealed by compliance with the subpoena is that their reasons for seeking relator's services have nothing to do with the objectives of the Grand Jury. Disclosure of their identities would therefore not compromise the confidences exchanged between relator and the Special School District and, according to the cases cited, would not fall within the previously enunciated contours of the privilege, *supra.* Yet it is precisely because no substantive relationship exists between these unknown clients and the Grand Jury's investigation that revelation of their identities would constitute an intrusion into distinct and private matters between these individuals and the attorneys in relator's firm. In a sense, then, because distinct, unrelated matters are involved, the identities of these individuals are more deserving of a cloak of confidentiality than those whose affairs are known to be the subject of an investigation. Public expectation of confidentiality may also be higher in a circumstance such as this, where identity is irrelevant to the purpose for which materials are sought. Efforts must be made, therefore, to preserve the privacy of individuals who seek to consult counsel.

Information gained by comparison of time spent by relator on various clients' affairs could be useful, however, and the public's interest in the substance of the Grand Jury's investigation requires access to portions of the relevant material subpoenaed. If precautions are taken to conceal the identities of clients while facilitating the process of comparison desired by the Grand Jury, the interests of the Grand Jury can be served and the privacy of these clients can be preserved. Under the circumstances of this case, such precautions should include judicial scrutiny of the materials sought by subpoena.

In *In re Grand Jury Witness (Salas and Waxman), supra,* the federal government subpoenaed bills, time sheets, receipts, and other fee information from two attorneys who represented targets of a grand jury investigation. The attorneys refused to produce any of the documents, claiming that the attorney-client privilege protected all materials sought. The court stated:

> The government's subpoena was met by blanket assertions of privilege, which are extremely disfavored. (Citations omitted). The proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, would have been for appellants to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege. This way the court can issue a protective order with respect to any privileged portions before they are turned over to the grand jury.

695 F.2d at 362. The court then allowed the attorneys the opportunity to demonstrate that the documents were privileged.

Similarly, the procedure to be followed in this case is an *in camera* inspection of subpoenaed materials; respondent can preside over the masking of names and the identification of communications that could suggest client identity, with the objective being the production of materials that reflect only the time spent by relator's law firm on various matters during the period under investigation. That the Court in *Great American, supra,* declined to order an *in camera* inspection of the materials sought does not preclude the Court from authorizing such a procedure under the

facts of this case. In *Great American,* the letters sought to be discovered were on their faces protected by the attorney-client privilege; an *in camera* proceeding was not necessary to reach that determination. 574 S.W.2d at 387. In this case, no determination of the extent to which the subpoenaed materials reflect privileged communications can be made without an *in camera* inspection. Respondent has the discretion to examine and protect the identities and privacy of relator's clients, and can demonstrate appropriate attention to matters claimed to be privileged.

■ There is no guarantee that the information ultimately transmitted to the Grand Jury will enable easy comparison of times and fees or lead to an obvious conclusion; but this does not alter the relevance of the information sought under the circumstances attendant to the particular investigation of relator. Under the facts of this case, the public's interest in a thorough Grand Jury investigation merits the limited disclosure of potentially privileged material.

■ Relator also maintains that the work-product privilege protects the materials subpoenaed from discovery. The work-product privilege prevents an opposing party from discovering "materials collected by an adverse party's counsel in the course of preparation for possible litigation." *Hickman v. Taylor,* 329 U.S. 495, 505, 67 S.Ct. 385, 390, 91 L.Ed. 451 (1947). The privilege has been held to apply to grand jury proceedings. *In re Grand Jury Proceedings (Duffy),* 473 F.2d 840 (8th Cir.1973); *In re Terkeltoub,* 256 F.Supp. 683 (S.D.N.Y. 1966). But, as with the attorney-client privilege, the work-product privilege customarily shields materials from discovery by an adverse party in a particular cause of action or investigation. Because the privilege is designed to prevent a party from reaping the benefits of his opponent's labors, its applicability is generally limited to those cases in which a party's substantive preparation for the same or a related cause of action would benefit from access to his adversary's materials prepared in anticipa-

tion of litigation of that particular cause. The Supreme Court's recent holding in *F.T.C. v. Grolier Inc.,* —— U.S. ——, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), cited by relator, applies only to actions brought under an exemption to the Freedom of Information Act; the protection of the work-product privilege does not extend to materials prepared in anticipation of prior unrelated litigation in all cases. 103 S.Ct. at 2214–15. Thus, the identities of clients in unrelated causes appear to be outside the scope of the work-product privilege.

■ Some material contained in the subpoenaed documents may relate to the action at hand, however. There may be items to which the work-product privilege applies. Respondent's *in camera* examination will provide the opportunity to determine which entries and memoranda may be protected by the privilege.

■ The work-product privilege is a narrower exception to discovery than is the attorney-client privilege as construed under the facts of this case; "blanket assertions of privilege" will not suffice to invoke its protection. *In re Grand Jury Proceedings (Salas and Waxman), supra,* at 362. But with appropriate deference and caution the respondent can conduct the examination to the benefit of all concerned and will be able to determine which, if any, materials were prepared in anticipation of litigation.

Relator asserts that the Grand Jury's subpoena is unreasonable, overbroad and constitutes an unreasonable search and seizure in violation of the fourth and fourteenth amendments. The reasonableness of such "searches" is determined by a balancing of public and private interests. Under the facts of this case and under the previous discussion, the Court determines that adequate protection of private interests can be accomplished while permitting the public's interest in a thorough investigation to be served. This case presents a "rare situation" that justifies an exception to the privacy of professional activities. *In re Grand Jury Proceedings (Duffy), supra,* at 843.

The provisional writ in prohibition heretofore issued by the Court of Appeals is

quashed, enabling respondent to conduct *in camera* examinations of the subpoenaed materials in accordance with the procedures suggested in this opinion.

All concur.