**Judith A. LANGDON, Respondent,**

v.

**Robert E. LANGDON, Appellant.**

**No. 56494.**

Missouri Court of Appeals,
Eastern District,
Division Five.

June 12, 1990.

David P. Senkel, Thurman, Smith, Howald Weber & Bowles, Hillsboro, for respondent.

Cynthia Smyrniotis Moseley, Theodore M. Tahan, Jr., Clayton, for appellant.

SIMON, Chief Judge.

Robert Langdon, husband, appeals from a decree of dissolution of his marriage to Judith Langdon, wife, which: (1) awarded custody of two of the parties' three minor children to wife and the remaining minor child to husband; (2) ordered husband to pay child support in the amount of $48 per week per child; and (3) ordered husband to pay $3,000 as contribution for wife's attorney's fees. In addition, both parties were required to provide medical insurance for the children and to share equally all medical expenses not covered by that insurance. On appeal, husband contends that the trial court abused its discretion in: (1) dividing the marital property; and (2) awarding child support. We affirm.

The parties were married May 31, 1969, and separated in September of 1987. The trial court entered a decree of dissolution on March 3, 1989. However, pursuant to wife's motion, which was sustained on March 24, 1989, the trial court entered an amended decree on March 29, 1989. Four children were born of the marriage, three of whom are unemancipated minors: Kevin R. Langdon, born July 5, 1971; Angela M. Langdon, born March 17, 1982; and Kimberly A. Langdon, born March 21, 1983. The custody of Angela and Kimberly was awarded to wife and custody of Kevin was awarded to husband.

Our review is governed by the principles of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32[1–3]. Further "[a]s trier of fact, it is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence." *Wynn v. Wynn,* 738 S.W.2d 915, 918[1] (Mo.App.1987) (citation omitted). "We defer to the trial court even if the evidence could support a different conclusion." *Id.*

In his first point, husband contends that the trial court abused its discretion in awarding wife an inequitable share of the marital property and ordering husband to pay an inequitable share of the marital debt. He claims that he received only eleven percent of the marital assets and nineteen percent of the marital debts, while wife received the balance. Husband argues that evidence as to his marital misconduct presented at trial did not warrant such an extreme distribution.

Initially, we note that § 452.330 RSMo 1986 requires the trial court, in dividing marital property, to consider several relevant factors, such as the economic circumstances of each spouse at the time of the property division, which includes the desir-

ability of awarding the family home to the custodial spouse, and the parties' conduct during the marriage. In making its determination as to the division of marital property, the trial court is vested with considerable discretion. *Mills v. Mills,* 663 S.W.2d 369, 372[6–8] (Mo.App.1983). The trial court is not required to make an equal division of the marital property, only a fair and equitable division of the marital property in light of the circumstances in each individual case. *Dardick v. Dardick,* 670 S.W.2d 865, 869[4, 5] (Mo. banc 1984).

Accordingly, we will interfere if the division is so heavily and unduly weighed in favor of one party as to amount to an abuse of discretion. *Mills,* 663 S.W.2d at 372[6–8]. On review, we presume that the trial court considered all the evidence in dividing the marital property. *Russell v. Russell,* 740 S.W.2d 672, 674[4, 5] (Mo.App. 1987). We will not "scour and nit-pick the record for accounting errors" nor will we second-guess the trial court's balance of the equities. *In re Marriage of Schulte,* 546 S.W.2d 41, 47[3, 4] (Mo.App.1977). Furthermore, on appeal, the challenging party has the burden of overcoming the presumption of correctness of the order prescribing such division. *Mills,* 663 S.W.2d at 372[6–8].

Here, no specific values were assigned to the marital property in the decree of dissolution. We have consistently held that absent a specific request for findings under Rule 73.01(a)(2), the trial court is not required to assign a value to each item of property. *Russo v. Russo,* 760 S.W.2d 621, 626[8] (Mo.App.1988). When no specific findings of fact have been requested or made, we presume the facts on appeal to have been found in accordance with the decree. *Id.*

Although the record reveals conflicts in the values assigned to the marital property by husband and wife, we view the evidence in the light most favorable to the decree. The trial court awarded wife the marital home which was valued at $55,000. Wife was also ordered to pay the outstanding mortgages on the property amounting to $46,000 and to hold husband harmless on these obligations. Wife was awarded a 1987 Oldsmobile valued at $8,000, but was ordered to pay the $8,500 debt outstanding on the car, and hold husband harmless on the debt. Wife was awarded household goods valued at $2,500, and ordered to pay various outstanding debts amounting to $4,016.

Husband was awarded a 1982 Ford Escort valued at $1,500 and a camper valued at $400. Husband received the time-share membership in Lost Valley Resort, which was not valued, and ordered to pay its $3,000 indebtedness. Husband also received common stock of Gold Cor, Inc. and High Hopes, Inc. valued at zero. Husband was ordered to pay the legal bills of the parties' son, Kevin, amounting to $2,250, and husband was awarded $2,000 in escrow derived from a lawsuit. In addition, husband was ordered to pay the $650 legal fees for his driving while intoxicated (DWI) charge. Husband was also awarded personal and household goods amounting to approximately $2,500.

A promissory note made payable to husband and wife valued at $20,061, was ordered to be sold with $1,204 of the proceeds applied to the debt from husband's various hospital stays for alcohol rehabilitation. The remainder was to be divided 65% to wife and 35% to husband. The husband and wife were each awarded their personal IRAs, wife's valued at $2,350 and husband's valued at $7,025. The value of husband's IRAs included two accounts that were dissipated after the filing of the petition. A home improvement loan secured by another deed of trust on the marital home of $3,700 was ordered to be paid ⅓ by wife and ⅔ by husband.

■ In sum, the marital assets totaled $100,132 and the marital debts totaled $68,-116. Wife received marital assets valued at $80,107 and marital debts valued at $59,-749, while husband received marital assets valued at $20,025 and marital debts valued at $8,367. These figures reflect that wife received approximately 80% of the marital assets to husband's 20% share, but wife assumed approximately 88% of the debt to husband's 12% share.

Such an award is not a per se abuse of discretion. *Klenke v. Klenke*, 742 S.W.2d 621, 623[2, 3] (Mo.App.1987). Nor is a percentage controlling or meaningful unless considered together with the nature and extent of the property divided. *Id.* Furthermore, in *Cook v. Cook*, 706 S.W.2d 606 (Mo.App.1986), we sustained a decree awarding wife 86% of the marital property and charging husband with 65% of the marital debt, stating that "the statute does not require the court to make an equal division but only a just division, ... and this is certainly true where one spouse has engaged in marital misconduct." *Id.* at 608[2], *quoting Arp v. Arp*, 572 S.W.2d 232, 235[8] (Mo.App.1978).

A review of the record reveals the following evidence. At the time of the trial, wife was employed by Home Brands Company in addition to her contribution as homemaker and primary caregiver to the two youngest children. Wife had worked full-time since 1980, when she returned to work because husband was having alcohol problems, was very depressed, and wanted to stop working. As a result, husband did not work from June 1980 to late 1981 or early 1982 and the family's income consisted entirely of wife's earnings during that period. During 1987, she paid most of the bills out of her salary. Her bi-weekly earnings, at the time of trial, were approximately $500 plus overtime. Her income for the years 1986, 1987, 1988 was, respectively, $18,922.55, $18,738.10, and $17,300.

At the time of the trial, husband was employed at Keane Printing Company and earned approximately $300 a week. Husband had over fifteen years experience in the printing industry. Husband testified that until September 30, 1988 he had been working at A & D Labels (A & D) as the "Print Shop Supervisor" at an hourly wage of $14.55, with substantial overtime. Husband's bi-weekly earnings were in excess of $1,100. His income for the years 1985, 1986, and 1987 was, respectively, $39,746, $44,232, and $46,226.

A former co-worker testified that husband, as supervisor, controlled the amount of overtime husband worked and subsequently "cut his hours back" after the petition was filed in December 1987. He further testified that husband was terminated by A & D in September 1988, because the owner was informed about husband's and other co-workers' plan to tell one of A & D's biggest customers of inferior work being performed on its jobs and that husband and co-workers were going to take the biggest customers and open their own shop. Evidence also was presented that in August, 1988, husband and a female co-worker placed a down payment on a $22,000 printing press to begin that business. Subsequently, in November 1988, both husband and the female co-worker, who was also terminated by A & D, sought employment at Keane Printing, a one-man shop, in order to explore "the possibility of getting into the business." Husband testified that he did not apply for employment elsewhere.

Other evidence was presented concerning husband's marital misconduct. Husband and wife both testified that husband was an alcoholic and that it was not uncommon for him to drink a twelve-pack of beer in the evening. Husband also admitted to keeping a cooler in his vehicle to drink beer while at work and while driving home. Husband also had a prescription for codeine, which he would mix with beer to "get him some relief." Husband admitted to carrying a concealed firearm and to firing his pistol in the backyard of the marital home while consuming alcohol two days before wife obtained an ex parte adult abuse order. Husband's alcoholism resulted in his voluntary admittance to alcohol rehabilitation programs on three separate occasions: February 1981, January 1988, and September 1988. Husband also was involved in two automobile accidents; one was in December 1987, and the other was on January 1, 1988, which resulted in his arrest for DWI and the revocation of his driver's license.

Further testimony disclosed that husband was involved in an extra-marital affair with the married female co-worker with whom he attempted to buy the printing press and subsequently worked with at Keane Printing. Husband did not admit to the affair, but did admit to a "very close

relationship with her." He further admitted that he had written a Christmas card in 1987 to the female co-worker, intercepted by wife, that stated, "I love you ever so much." Husband also testified that he had provided the down payment and co-signed on a loan for a van purchased by female co-worker in May 1988. Additionally, husband stated that he had smoked pot with her in the summer of 1988. Furthermore, the former co-worker testified that since the fall of 1987, husband and the female co-worker met in his trailer so that they could "be together." He also stated that husband said that he and female co-worker were having an affair.

The record also indicates financial misdeeds on husband's part. Husband testified that he failed to disclose opening several accounts in the summer of 1988 after closing out an account that was subject to garnishment for failure to pay delinquent support to wife. Husband also admitted to a five day gambling trip to Las Vegas in July 1987 with another male and two female acquaintances for which husband withdrew $4,000 from the family savings account to cover the cost for himself and his friends.

Based upon the totality of the evidence presented as to husband's marital misconduct, we cannot say that the trial court abused its discretion in dividing the marital property. Point denied.

■ In his second point, husband contends that the trial court abused its discretion in awarding child support in the amount of $48 per week per child. Husband argues that this amount far exceeds the "chart amount" and does not take into account the fact that husband was awarded custody of one of the parties' minor children. Further, husband argues that the child support award is "economically ruinous" to him and he is unable to pay.

The trial court has considerable discretion in awarding child support. *Steffens v. Steffens*, 773 S.W.2d 875, 876[1] (Mo.App. 1989). A child support award will not be disturbed unless the evidence is "palpably insufficient" to support it. *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195[1]. We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion. *Id.*

Husband's initial contention that the trial court's award of child support exceeded the "chart amount" is without merit. We note that the decree was entered prior to the effective date of Rule 88.01, Presumed Child Support Amount, October 2, 1989. In *Hogrebe* we stated that the child support charts are guidelines for practitioners but have no precedential value in the trial court's determination of child support. 727 S.W.2d at 195[1].

Husband also contends that the trial court did not take into account the fact that husband was awarded custody of the parties' 17 year old son. There is no basis in the record for finding the trial court did not consider this evidence.

■ In considering husband's final contention that the child support award is "economically ruinous" to him, we are guided by *Hogrebe*, in which we stated:

> In determining the ability of a non-custodial parent to pay child support, the trial court may properly consider both past and present earnings. Direct proof of present employment and income is not itself the only avenue of proof of ability to pay. "A court may in proper circumstances, impute an income to a husband according to what he *could have earned* by the use of his best efforts to gain employment suitable to his capabilities."

727 S.W.2d at 195[2], *quoting Foster v. Foster*, 537 S.W.2d 833, 836[3, 4] (Mo.App. 1976) (emphasis added) (citations omitted). The record, viewed in the light most favorable to the decree, reveals that although husband was currently employed earning $300 per week, he had fifteen years of experience in the printing business and that prior to September 1988 was earning in excess of $40,000 per year at A & D. Evidence indicated that husband intentionally reduced his income when the divorce proceedings were initiated. Furthermore, husband testified that he did not apply with employers other than Keane Printing after leaving A & D. From this testimony, the

trial court could have concluded that husband had not used his best efforts to gain employment suitable to his capabilities. Consequently, the court could have properly considered husband's past yearly earnings in determining his ability to pay child support. The trial court did not abuse its discretion in its award of child support to wife.

Judgment affirmed.

GRIMM, J., and SIMEONE, Senior Judge, concur.