In re the MARRIAGE OF Edward
J. HERSHEWE, Petitioner–
Respondent–Appellant,

and

Suzanne L. Hershewe, Respondent–
Appellant–Respondent.

Nos. 20207, 20219.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 10, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 6, 1996.

Application to Transfer Denied
Dec. 17, 1996.

Glenn R. Gulick, Jr., Hershewe & Gulick, P.C., Joplin, for Husband.

C. John Pleban, Michael J. Schaller, Burgon M. Greenberg, Greenberg & Pleban, St. Louis, for Wife.

PREWITT, Judge.

The parties appeal from a decree of dissolution of their marriage. Both complain of the division of marital property. The wife also claims error regarding discovery, and the husband says the trial court erred in assessing attorney's fees.[1]

Husband is a practicing attorney at law, primarily representing claimants seeking personal-injury damages. Wife is a former school teacher. The parties were married on October 20, 1984, and separated on June 1, 1992. Wife ceased teaching following the birth of the first daughter in 1987. A second daughter was born in 1990. There is no issue here pertaining to the parties' children.

Each party contends that the other was guilty of marital misconduct. Husband admitted sexual affairs with several women during the marriage. Wife accused Husband of sexual abuse of their children, which the trial court found had no factual basis.

*WIFE'S APPEAL*

Wife's first point appears to have two separate but somewhat related contentions. It states:

> The trial court erred in denying wife discovery of outstanding case expenses advanced by husband's law practice and erred in ruling that said advances are not marital property subject to the jurisdiction of the court and division between the parties in that case expenses are not communications protected by the attorney-client privilege and because the source of all of said outstanding advances was marital funds obtained from the resolution of cases during the course of the marriage.

In part by reference to the argument following the point, we interpret this point to complain both of discovery and the ultimate finding of the trial court regarding case expenses advanced by Husband in his law practice. The two contentions may be stated, using the language of the point:

> (1) The trial court ... erred in ruling that said advances are not marital property subject to the jurisdiction of the court and division between the parties ... because the source of all said outstanding advances was marital funds obtained from the resolution of cases during the course of the marriage.

> (2) The trial court erred in denying wife's discovery of outstanding case expenses advanced by husband's law practice ... in that case expenses are not communications protected by the attorney-client privilege and because the source of all said advances was marital funds obtained from the resolution of cases during the course of the marriage.[2]

## I. ADVANCES TO CLIENTS

As pointed out in the argument portion of Wife's brief, the trial court treated the recovery of advances as income, as it was dependent, in large part, upon Husband's skill in

---

1. Neither party complains of the portion of the decree dissolving their marriage. However, for simplicity, we refer to the parties by their status prior to the entry of the decree, that is, "Husband" and "Wife".

2. These contentions may not be sufficiently related to a single issue to have been combined in one point. *See Hackathorn v. Lester E. Cox Medical Center,* 824 S.W.2d 472, 475–76 (Mo.App.1992). Nevertheless, we consider both contentions.

obtaining a monetary recovery on the client's claim. The advances were, in effect, treated as necessary expenses, although they technically may have been a loan. However they were treated, it is clear that the trial court considered the Husband's anticipated income in dividing the marital property.

■ As discussed in more detail below in connection with Wife's fourth point, we are of the opinion that the value of Husband's contingency fee arrangements is too speculative to constitute marital property suitable for division. The value of client advances suffer from a similar lack of certainty.

In *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976), a dissolution decree was contested on the grounds, *inter alia*, that the amount of marital property awarded to wife was erroneously based on husband's anticipated earning capacity. Affirming the award, the *Vanet* court noted that husband, a lawyer, "had work in progress which at the time of [the dissolution] trial had not yet matured into fees." *Id.* at 242. It concluded that this anticipated earning capacity was a relevant factor for determining what constitutes a just award for maintenance.

■ Wife received approximately fifty-eight percent of the marital assets, and Husband received approximately forty-two percent. It appears that this division was based in large part upon Husband's superior earning capacity. Even if the trial court misdenominated the advances, there was no prejudicial error. *See In re Marriage of Lewis*, 808 S.W.2d 919, 923 (Mo.App.1991)(an erroneous declaration pertaining to marital property does not call for reversal where the decree is nevertheless fair). This part of Point I is denied.

## II. DISCOVERY OF ADVANCES TO CLIENTS

The point does not specifically state in what respect the trial court erred in denying discovery of the case expenses. In argument following the point, Wife complains of "numerous attempts to discover the terms of the standard employment agreement between Husband and his law clients, particularly terms concerning the client's obligation, if any, to repay case expenses." We do not find a specific request for this information. It appears that the information sought was "of each and every file," or "all documents" which identify expenses advanced, or a "list showing the dollar amount of advances made to each client file" for certain years. We find no request for the terms or the form of the standard employment agreement, but copies of those in use.

Wife did receive information regarding the total expenses advanced to Husband's clients up to the time of the dissolution proceedings in the form of answers to interrogatories and trial testimony. She concedes that this court can rely on this information.

■ Generally, the propriety of discovery is a matter of trial court discretion which appellate courts will not disturb except for abuse of that discretion. *State ex rel. Kuehl v. Baker*, 663 S.W.2d 410, 411 (Mo.App.1983). The parties are normally allowed to obtain discovery regarding any matter not privileged which is relevant to the subject matter involved. Rule 56.01(b)(1). "Relevant" includes material "reasonably calculated to lead to the discovery of admissible evidence." *Id. State ex rel. Stecher v. Dowd*, 912 S.W.2d 462, 464 (Mo. banc 1995). "Privileged" under the rule refers to "professionally oriented communication between attorney and client." *State ex rel. Seitrich v. Franklin*, 761 S.W.2d 756, 758 (Mo.App.1988).

Section 491.060(3), RSMo 1994, provides that an attorney is incompetent to testify "concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client." Rule 4 of the Rules of Professional Conduct of an attorney states in Rule 1.6, "Confidentiality of Information," that a lawyer "shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out representation, and except as stated in paragraph (b)." Those exceptions have no relevance here.

■ Although it exists for the benefit of the client, the attorney-client privilege may be invoked by either the attorney or the

client. *State ex rel. Polytech, Inc. v. Voorhees*, 895 S.W.2d 13, 14 (Mo. banc 1995). That privilege protects "'confidential communications between an attorney and client' concerning representation of the client." *Id.* Missouri courts consider the attorney-client privilege as a "fundamental policy, to which disclosure is the exception." *State ex rel. Great American Ins. Co. v. Smith*, 574 S.W.2d 379, 383 (Mo. banc 1978).

■ Here, Wife is not just asking for the total amount of the advances, information which she apparently received, but for the advances associated with a particular client. The latter information is privileged under the case law, statute, and rules of professional conduct above cited. *See also State ex rel. Friedman v. Provaznik*, 668 S.W.2d 76, 79 (Mo. banc 1984).

■ Nor would so-called *in camera* inspection of Husband's files be necessarily proper here. Wife suggests that even if information regarding the advancement of expenses is privileged, she proposed to the trial judge numerous alternatives, including "conditioning disclosure upon execution of a confidentiality agreement, redaction of client names and *in camera* inspection of the allegedly privileged advancements." Similar procedures have been used both regarding information of a physician's patients and an attorney's clients. *See Provaznik*, 668 S.W.2d 76; *Lester E. Cox Medical Ctr. v. Keet*, 678 S.W.2d 813 (Mo. banc 1984).

In *Provaznik*, a lawyer under grand jury investigation for overbilling a school district sought to quash a subpoena requesting billing statements of the lawyer relative to all clients. The prosecuting attorney intended to compare these statements to those of the school district. Declaring that "the public's interest in a thorough Grand Jury investigation merits the limited disclosure of potentially privileged material," the Supreme Court approved *in camera* inspection of the subpoenaed materials for the purpose of determining the extent to which they reflected privileged communication. 668 S.W.2d at 80.

In *Keet*, a malpractice plaintiff seeking damages for the death of her husband who died from a post-operative infection sought medical records of defendant's patients who had developed symptoms similar to her husband and information about patients who shared the same hospital room as the decedent. Again, the Supreme Court allowed *in camera* inspection to determine whether the information requested could be gleaned without violating doctor-patient privilege, explaining that the information "may be relevant or lead to the discovery of evidence relevant to plaintiff's malpractice claims." 678 S.W.2d at 815.

Here, it is difficult to see how Wife's obtaining any more information than she did would be of any aid in evaluating marital property. As discussed above, the trial court had before it reliable information with respect to the client advances and was able to make a fair disposition of the parties' assets. We do not believe Wife's is one of those "rare situations which justifies an exception to the privacy of professional activities" or one that even necessitates *in camera* inspection. *See Provaznik*, 668 S.W.2d at 80. Unlike in *Provaznik* and *Keet*, the need to access the privileged documents is not compelling here.

We conclude that Wife obtained such information as was necessary in determining the amount of marital property. The trial court, by limiting the discovery, did not abuse its discretion. Point I is denied.

### III. INCOME DURING SEPARATION

■ For her second point, Wife contends that the trial court erred in failing to consider and award her a portion of the income Husband earned while they were separated. The record does not convince us that this occurred.

Husband and Wife separated on June 1, 1992. The trial commenced on July 25, 1994, and ended on August 5, 1994. The trial court ordered the marriage dissolved and took all other matters under advisement. On December 29, 1994, Findings of Fact and Conclusions of Law, together with a Decree of Dissolution, were entered. Wife claims that during the separation period Husband had a substantial income which was not considered by the trial court. Wife contends that the absence of any mention of the post-separation income in the trial court's Find-

ings of Facts indicate that it was not considered. The absence of an express finding does not establish that the trial court did not consider that income. There was sufficient evidence for the trial court to have concluded that Husband expended the marital funds at issue on behalf of the marital estate and did not squander it. *See Mistler v. Mistler,* 816 S.W.2d 241 (Mo.App.1991). There is no contention that the trial court failed to divide marital assets which, of course, part of the income may have become if it was not otherwise expended. Point II is denied.

### IV. MISSING PROPERTY

For her third point Wife argues that the trial court "erred in placing the burden of proof upon wife to account for specific missing marital funds and erred in failing to award her equitable share of missing marital property." Again, this point is premised upon facts not supported by the evidence.

Although it may be correct that the burden of proving the whereabouts of marital funds lies with the spouse who withdraws or transfers such funds in the anticipation of a divorce, such a rule is not helpful to Wife's appeal. *See Cofer v. Price–Cofer,* 825 S.W.2d 369, 373–74 (Mo.App.1992); *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo.App. 1992).

Here, the trial court appears to have carefully and diligently reviewed the evidence and was justified in finding that there was no missing or squandered property. The record does not indicate that the trial court placed the burden on Wife to account for any of the assets in question but, at the most, required that she support her contention that there were, in fact, "missing" funds. The court's findings indicate that it did not find any assets that had not been legitimately disbursed or accounted for. Point III is denied.

### V. GOODWILL OF HUSBAND'S LAW FIRM

For her fourth point, Wife contends that:
The trial court erred in concluding that the value of husband's law practice consisted solely of funds on deposit in its bank accounts, real estate, furniture, and equipment, in that the active, unresolved contin-

gency case files and goodwill of the law practice are valuable marital property which must be divided between the parties.

Goodwill in a professional practice acquired during marriage is marital property subject to division in a dissolution of marriage proceeding. *Hanson v. Hanson,* 738 S.W.2d 429, 435 (Mo. banc 1987). Goodwill is shown only when there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such a practice, or expert testimony and testimony of members of the subject profession as to the existence of goodwill in a similar practice in the relevant, geographic and professional market. *Id.*

Missouri rejects the position of some courts that goodwill exists and is subject to division, although it may not be sold. *Id.* at 436. A professional practitioner is not required to "pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or other method of liquidating value." *Id.*

Wife asserts that she was prepared to show the existence of goodwill in a practice similar to Husband's, as called for in *Hanson,* but was unable to do so because the trial court prevented her expert from inspecting Husband's active case files. Wife's expert believed it would be "fruitless" to try to find other law firms with a similar value or similar to Husband's firm until he knew the value of Husband's firm.

Wife established that Husband's law practice was a sole-proprietorship and the number of attorneys and other employees and their salaries were presented. It is unclear to us why the goodwill value of the law firm could not be presented without knowledge of Husband's files. No authority is cited by Wife supporting the notion that access to client files is discoverable or necessary to value the goodwill of a law practice. If that were required, then it would appear that any comparable law firm would also have to present its files to Wife's expert.

In reviewing attempts to place a value on the goodwill of a law practice, other jurisdictions have considered the practitioner's age,

comparative professional success, health, length of time in practice, past earning power, and reputation. Martin J. McMahon, J.D., Annotation, *Valuation of Goodwill in Law Practice for Purposes of Divorce Court's Property Distribution*, 77 A.L.R.4th § 8, pp. 701–712 (1990). Wife does not contend, and the record does not indicate that any of this information was unavailable or denied.

In *Ker v. Ker*, 776 S.W.2d 873 (Mo.App. 1989), the trial court's finding that a St. Louis custom tailor's business had no goodwill was upheld. There, another custom tailor testified that his business had no value to anyone else because each customer comes specifically to him for his unique designs. *Id.* at 876. In the instant case, Wife's expert acknowledged that Husband had "developed a very fine reputation and a lot of skill."

In *Prahinski v. Prahinski*, 75 Md.App. 113, 540 A.2d 833 (1988), the court held that a husband's sole-practitioner law firm had no goodwill as saleable or marketable assets. The court explained that "where goodwill is a marketable business asset distinct from the personal reputation of a particular individual goodwill has an immediately discernible value as an asset and may be identified as an amount reflected in a sale or transfer of a business." *Id.* 540 A.2d at 843. If the goodwill depends upon the continued presence of a particular individual, the goodwill is not a marketable asset distinct from the individual. *Id.* The court concluded 540 A.2d at page 843:

> In the case *sub judice*, the appellee did not and could not make such a showing. Appellant is a sole practitioner. Were he to terminate his activity, the lights would go out and the value of his practice would be extinguished. The practice itself is non-transferable. A lawyer's clients cannot be sold; the right to represent them can only be transferred with their express consent; they have the absolute right to select their own future representative.

We conclude that the trial court did not deny Wife access to information that was essential to her establishing the value of Husband's law practice. Wife did not prove goodwill existed as required in *Hanson.* See *In re Marriage of Parker*, 762 S.W.2d 506 (Mo.App.1988). There was also substantial evidence supporting the trial court's judgment that no goodwill attached to Husband's law practice. *See Ker*, 776 S.W.2d at 876.

## VI. CONTINGENCY FEES

Wife also contends under this point that the contingency fees for cases pending in Husband's office should be at least partially marital property and subject to distribution to her.

Obviously, no market value can be readily, if at all, placed upon contingency fee contracts. They cannot be bought and sold like other assets, even including law practices. Rule 1.17 of Missouri Rules of Professional Conduct provides that a law practice, with certain exceptions not applicable here, must be "sold as an entirety."

■ The trial court found that fees generated from Husband's contingency case files are future income and what will be received is "purely speculative." We conclude that the trial court's findings and judgment are consistent with such decisions as *Hanson.* See *Taylor v. Taylor*, 736 S.W.2d 388, 390 (Mo. banc 1987); *Vanet*, 544 S.W.2d 236, 242.

In *Musser v. Musser*, 909 P.2d 37, 38–41 (Okl.1995), the court determined that an attorney's contingent fee cases are not marital property. *Musser* discusses cases in other jurisdictions which disagree on whether contingent fee cases should be considered as marital property and valued for division of property purposes. The court concluded that uncertainty of recovery places contingency fee cases in the category of future income, not marital property. The court stated at page 40:

> [A]n attorney is not entitled to receive payment for services rendered unless the client succeeds in recovering money damages. For this reason, we conclude that because Husband in the case at bar is not certain to receive anything under the contingency fee contracts, those contingency fee cases should not be considered marital property. At most, Husband has a potential for earning income in the future. He is not assured of earning anything for his

efforts nor does he acquire a vested interest in the income from those cases unless his client recovers, an event impossible to accurately predict. Therefore, we deem pending contingency fee cases of a law firm to be future income and not a part of the marital assets.

We conclude that there is no merit to Wife's appeal. What errors, if any may exist, in the trial court's findings were not prejudicial to her and the result was fair to Wife. We move now to Husband's appeal.

## HUSBAND'S APPEAL

### I. DIVISION OF MARITAL ASSETS

Husband contends that the trial court erred in dividing the marital property by giving Wife approximately fifty-eight percent because the trial court failed to consider Wife's misconduct. This primarily was unfounded charges of sexual abuse against him.

■ The trial court has considerable discretion in dividing marital property, and this Court interferes only if the division is so unduly weighted as to amount to an abuse of discretion. *In re Marriage of Smith*, 892 S.W.2d 767, 769 (Mo.App.1995). Equal division of property is not required and disproportionate divisions are routinely affirmed. *Id.* A division does not have to be particularly equal, particularly when there is misconduct involved. *Id.*

■ On review, we presume the trial court considered all evidence in dividing the property. *Langdon v. Langdon*, 792 S.W.2d 645, 647 (Mo.App.1990). The party challenging the division of marital property has the burden of overcoming the presumption of correctness of the order. *Id.* As earlier mentioned, both parties were guilty of misconduct and Husband had considerably more earning capacity than did Wife. Under these circumstances, we do not think that the division of property was an abuse of discretion.

### II. ATTORNEY'S FEES

■ Husband's remaining contention complains of the court's manner and method of determining attorney's fees. The trial court ruled that each party should bear its own attorney's fees and one-half of trial expenses and costs. The court totaled Husband's attorney's fees paid from the marital property, divided the total in half, and credited half of the same to Wife. It then did the same for Wife's attorney's fees. Wife's attorney's fees were less, and after crediting Husband with half the amount that Wife spent, the court found that Husband owed Wife an additional amount.

■ Initially we note that Husband did not cite any authority in support of his contention that he was denied due process, as he did not have an opportunity to challenge Wife's claim for attorney's fees. A point of error unsupported by a citation of a relevant authority is deemed abandoned under Rule 84.04(d). *Inman v. Reorganized School Dist. No. II of Hayti*, 845 S.W.2d 688, 694 (Mo. App.1993).

■ The trial court is vested with broad discretion in ordering payment of attorney's fees, and such an award is reviewable only for an abuse of discretion. *Dimmitt v. Dimmitt*, 849 S.W.2d 218, 222 (Mo.App.1993). There was no abuse of discretion here. We find no merit in Husband's appeal.

The judgment is affirmed.

CROW, J., concurs.

SHRUM, J., concurs in result and files concurring opinion.

SHRUM, Judge, concurring.

I concur in the principal opinion in all respects except its holding that the value of client advances is too speculative to constitute marital property suitable for division.

I would not reach that issue. Wife's first point relied on does not claim that the alleged misclassification of advances to clients as non-marital resulted in an unfair distribution of property. Apparently, Wife assumes that a trial court's misclassification of property is reversible error as a matter of law. Any such assumption by Wife would be incorrect.

It is well settled that "the mere erroneous declaration of what is or is not marital property, where the decree is nonetheless fair,

will not require a reversal." *In re Marriage of Garrett,* 654 S.W.2d 313, 316[1] (Mo.App. 1983). *See also Spidle v. Spidle,* 853 S.W.2d 311, 316[4] (Mo.App.1993); *Stephens v. Stephens,* 842 S.W.2d 909, 915[5] (Mo.App.1992). Appellate courts do not reverse any judgment unless they find that the error committed by the trial court against the appellant materially affected the merits of the action. *Spidle,* 853 S.W.2d at 316; *In re the Marriage of Jennings,* 910 S.W.2d 760, 765[7] (Mo.App.1995); Rule 84.13(b).

I agree with the principal opinion's conclusion that "[e]ven if the trial court misdenominated the advances, there was no prejudicial error." Consequently, I would resolve Wife's first point adversely to her on that basis alone.