**Susan C. CHIODINI, Respondent,**

v.

**Raymond A. CHIODINI, Appellant.**

Nos. 72861, 73084.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 18, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1998.

Application for Transfer Denied Jan. 19, 1999.

Law Office of Michael A. Gross, Michael A. Gross, St. Louis, for appellant.

W. Bevis Schock, St. Louis, for respondent.

KAROHL, Judge.

Husband appeals division of marital property, award for child support and attorney's fees in dissolution decree entered on May 23, 1997. The parties were married on July 23, 1974. They separated on July 21, 1995. There are two children, ages thirteen and five. Wife filed a petition for dissolution on February 7, 1996. Husband filed a cross-petition for dissolution. Accordingly, there is no appeal issue on allegations of the parties and the finding the marriage was irretrievably broken.

An extraordinary event occurred on January 31, 1996, which created problems during the trial for dissolution and will hereafter complicate the relationship of the parties and their children. The children were visiting Husband. Wife appeared to retrieve the children. There was a confrontation. Wife left and returned with St. Louis City police officers. Husband shot at Wife, but struck one of the officers. At the time of trial, felony criminal charges involving the shooting were pending against Husband. A substantial civil lawsuit brought by the police officer against Husband is pending. Prior to trial for the dissolution, Husband asserted a Fifth Amendment privilege. For that reason, the trial court sustained Wife's motion to strike his pleadings to the extent they requested affirmative relief. He did

not testify at trial. Husband's evidence consisted of: (1) his income and expense and property statements which were in evidence by stipulation, subject to cross-examination; and, (2) testimony of his brother regarding a willingness to participate in temporary custody or visitation arrangements on behalf of Husband. The court refused to permit Husband's witness, Dr. Robert Becker, a psychologist, to testify as a fact witness regarding treatment of Husband's disabilities and as an expert witness with respect to his capacity to work and earn income. Other undisputed facts will be considered during a discussion of Husband's six points of error. We review in accord with *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and *In re Marriage of Fry*, 827 S.W.2d 772, 776 (Mo.App.1992).

■ Husband first argues the court erred in the division of marital property because the court did not expressly consider the contribution of each spouse in the acquisition of the marital property. The court awarded separate property to Husband, none to Wife. It awarded Wife approximately $214,789, 80% of the marital property. Husband received $53,497 of marital property. The court ordered Husband to pay $10,500 in attorney's fees and $5,731 to Wife as retroactive child support.

■ We reject this claim of error for several reasons. First, contribution of the parties to the accumulated marital estate was not the subject of an evidentiary dispute during the trial. Wife did not testify, on direct or cross-examination, on that issue. During the marriage, both parties were employed, Husband as an investigator for the Internal Revenue Service and Wife, for nearly twenty years, as a secretary for the Metropolitan Sewer District. Both had substantial earned income. Accordingly, the source of the funds which become marital property was incidental to the disputed issues at trial. Second, although not expressly considered, there is no support for a finding the trial court did not consider, or refused to consider, all relevant factors in the division of marital property as defined in section 452.330.2 RSMo 1994. The failure of the trial court to expressly find the degree of contribution of

the parties does not, in itself, support a finding the court failed to consider this is a relevant factor. *In re Marriage of Hershewe*, 931 S.W.2d 198, 202–203 (Mo.App. S.D.1996). Third, there was extensive evidence of Husband's abuses and probable future financial difficulties caused by those abuses. In particular, those which have caused and will continue to cause Wife, as a single parent, loss and hardship. One example of Wife's loss and hardship was the foreclosure of the family home during pendency of this case. Another example is Wife's future responsibility as a single, working parent while Husband's future is obscured by his criminal charges and his health problems. This evidence supports the unequal awards of marital property. The division of marital property was not "shockingly unfair" and was authorized by the statutory and nonstatutory factors supporting an unequal division. *In re Marriage of Hash*, 838 S.W.2d 455, 459–460 (Mo.App. S.D.1992). We find no abuse of discretion.

■ Next, Husband argues the court abused its discretion in imputing earnable income of $1,000 per month, that resulted in a Form 14 child support order of $396 per month. He argues there was no substantial evidence to support the finding Husband has the ability to work for wages or any amount he may be able to earn. He also argues there was no evidence to support a finding he voluntarily became or remained unemployed to avoid his parental duties.

Wife testified Husband was unemployed. Her evidence supported a finding he was, and had been for a long period of time, an alcoholic. On various occasions he was hospitalized in an effort to control the illness. At the time of the hearing, he was under the care of numerous doctors for the illness and for mental disabilities. After the shooting, he was suspended by his employer without pay. His employment with the federal government had been terminated. He is under a felony charge for shooting a police officer. There was no evidence regarding his physical or mental abilities or whether he could find work for wages, considering his health limitations and the pending felony charge. There is no evidence to support a finding regarding

his level of education, training, experience or capacity. The trial court refused available medical testimony regarding Husband's capacity to work and earn income. The court considered Husband's refusal to provide a written authorization to disclose his medical records. It found Husband "introduced no evidence to support his current unemployment, and, in the opinion of the court, Husband is and remains capable of no less than employment at minimum wage."

The finding of the trial court and the subsequent award of child support is wholly unsupported by any substantial evidence. Wife testified Husband was unemployed and court so found. Wife offered no testimony to support a finding regarding the capability of Husband to find employment or his ability to find work. Wife urged the trial court to impute to Husband the earnings he formerly received from the Internal Revenue Service. She did not request the court to impute "employment at minimum wage." This may explain why there is no evidence to support the "opinion" which resulted in the award of child support.

Because the child support orders are unsupported by any evidence they are reversed. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We do not reach a related argument of error. In the event there is a substantial change in circumstances with regard to Husband's earned income or ability to earn, then the issue of child support may be the subject of a motion to modify the decree.

It is also not necessary for us to consider Husband's point the court erred in rejecting the testimony of Dr. Robert Becker, Husband's psychologist. This ruling excluded testimony regarding Husband's mental health treatment and disability. The testimony was proposed as a rebuttal to evidence of an ability to work but there was no such evidence. Thus, the excluded testimony was unnecessary for Husband and the ruling was not prejudicial in the form argued by Husband.

■ Husband's last claim of error is the court abused its discretion in finding he intentionally tried to deplete Wife's resources and thereby preclude her representation by counsel, and, thereafter awarding her attor-

ney's fees of $10,500. The court expressly found "each party has sufficient funds to pay his or her own attorney's fees." Before trial, the court made joint bank accounts available only to Wife. She used the proceeds from those accounts to pay bills. She testified she had paid her attorney's fees, including the fees that are the subject of the award. She may have used marital assets in the bank accounts to pay her attorney's fees. However, Husband did not argue this creates the possibility of a resulting "double payment." If she used marital funds to pay her attorney, then the award may have the effect of requiring Husband to pay her attorney's fees twice, once with some of his marital assets and once from marital assets awarded to him in the decree. Payment of the award could come from no other source. However, his argument is based only on an abuse of discretion "because the finding of culpability and the implicit finding of ability to pay were not supported by substantive evidence."

There is no evidence to support a finding of fact regarding the effect of the pending felony criminal charges on Husband's assertion of privilege, before and during trial, and particularly, whether assertion of the privilege was a matter of criminal defense or dissolution trial strategy. The criminal case may explain and support a decision to stand on a Fifth Amendment privilege and make a finding the decision was for an improper purpose suspect. The court found Husband or his attorney had engaged in a conscious effort to deplete Wife's financial reserve. The references were to Husband asserting his privilege and not waiving a medical privilege by signing a consent. It is unclear whether the court considered either Husband's or his counsel's peculiar responsibilities during the pendency of the felony criminal case when it found Husband's conduct was motivated by an intent to deplete Wife's resources. However, there is no evidentiary support for finding trial court error on its findings.

Husband's argument is "[b]ut the notion that invoking this constitutional safeguard might warrant an unexplained and undocumented $10,500.00 penalty, particularly in the financial environment established by the rec-

ord in this case, is inconsistent with the sanctity of the right." The implicit conclusion is the trial court invoked a $10,500 "penalty" only because Husband's assertion of his Fifth Amendment privilege. That view fails to consider Husband also refused to cooperate by providing authorization to obtain relevant medical information on his mental and physical problems. The trial court finding of intent to injure Wife is supported by an available inference. Even if his conduct may be explainable by good, sufficient and legitimate reasons, we find no abuse of discretion. *Leone v. Leone,* 917 S.W.2d 608, 616–617 (Mo.App. W.D.1996). The point argued on the award of attorney's fees is denied.

We affirm the awards dividing marital property and for attorney's fees. We reverse the judgment for child support.

ROBERT G. DOWD, Jr., C.J. and PUDLOWSKI, J., concur.