**STATE ex rel. John ROGERS, Relator,**

v.

**The Honorable Robert S. COHEN,
Respondent.**

No. SC 88778.

Supreme Court of Missouri,
En Banc.

Aug. 26, 2008.

John P. Rogers, Brocca Smith, Rosenblum, Schwartz, Rogers & Glass, Clayton, for Relator.

Robert P. McCulloch, David R. Truman, Kathy Alizadeh, Clayton, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

John Rogers, a criminal defense attorney, filed a petition for a writ of prohibition with this Court seeking relief from a subpoena duces tecum issued by a St. Louis County grand jury. The subpoena directed him to provide a copy of a sworn statement by his client's older son. The client is a person of interest in the grand jury investigation of the disappearance of his younger son, a ten-year-old disabled child. Rogers filed a motion to quash the subpoena in the Circuit Court of St. Louis County, claiming that complying with the subpoena required disclosure of attorney work product and that its disclosure would be unreasonable and oppressive as the prosecution showed no need for the material. After an *in camera* review of the transcript of the interview, the circuit court overruled the motion to quash.

This Court agrees that the transcript of a recorded interview of a person taken in anticipation of litigation is not discoverable by a grand jury subpoena unless substantial need and undue hardship are shown. Even then, a court may not order disclosure of intangible work product. Here, such need and undue hardship were not shown. The Court's preliminary writ of prohibition is made absolute.

### Factual and Procedural Background

In June 2003, Mr. Rogers' client reported to the St. Louis metropolitan police that someone stole his vehicle when it was parked with his younger son inside. Although the police recovered the vehicle shortly thereafter, the younger son was not in the vehicle, and his fate remains unknown. Following the report of the stolen vehicle, the police interviewed the client in 2003. The interview ceased when the client invoked his constitutional right to remain silent. Shortly thereafter, also in 2003, the police also interviewed the client's older son.

The client hired Mr. Rogers as counsel to represent him in connection with possible charges arising out of the disappearance of his younger son. It is not clear what investigation the police continued to undertake over the next few years. This case involves, rather, a sworn statement taken by Rogers on March 12, 2007, some four years after the younger son disappeared, from the client's older son on the client's behalf. A stenographer transcribed the statement.

A St. Louis County grand jury subpoenaed Rogers to appear and produce the "transcript, video, audio or other recording of statement taken from [the older son]". As previously noted, his motion to quash the subpoena on the grounds that the material constituted work product and that the subpoena was unreasonable or oppressive was overruled, the court finding that the transcript did not constitute work product as it did not contain counsel's opinions, theories, or conclusions. Rogers seeks a writ from this Court to prohibit the grand jury from subpoenaing him and compelling the production of the transcript of his interview with the client's older son.

### Writs Serve as Extraordinary Remedy

A writ of prohibition is an extraordinary remedy. *State ex. rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994). It is an appropriate remedy, however, when a subpoena has issued in a circuit court proceeding requesting material that is protected from discovery. *State ex rel. Boone Ret. Ctr., Inc. v. Hamilton*, 946 S.W.2d 740, 741 (Mo. banc 1997). "This is because the damage to the party against whom discovery is sought is both severe and irreparable if the privileged material is produced and this damage cannot be repaired on appeal." *Id.* (internal quotes omitted). As damage may be severe and irreparable in the grand jury context as well, prohibition is appropriate to prevent a grand jury from compelling production of work product. *See State ex rel. Friedman v. Provaznik*, 668 S.W.2d 76, 81 (Mo. banc 1984) (quashing the writ but not denying its appropriateness within the grand jury context).

### Work Product

Counsel asserts that the work-product doctrine precludes discovery of the transcript of his interview of the client's older son because it was work done in preparation for litigation. The United States Supreme Court first recognized the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and it is now firmly established in the common law. *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840 (8th Cir. 1973). The premise of the doctrine comes from the need for "a lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 511, 67 S.Ct. 385. "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).[1] "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.*

The Supreme Court articulated the public interest that dictates the need for the protection of an attorney's work product:

Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a

---

1. The Supreme Court noted, in *Nobles*, that the work product doctrine recognized in *Hickman* provides a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" 422 U.S. at 237–38, 95 S.Ct. 2160. It held that "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived," and what constitutes waiver depends on the circumstances of the case. *Id.* at 239, n. 14, 95 S.Ct. 2160.

lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their client's interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed . . . as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385. "At the same time, [however,] public policy supports reasonable and necessary inquiries. Properly to balance these competing interests is a delicate and difficult task." *Hickman,* 329 U.S. at 497, 67 S.Ct. 385. At issue here is the balancing of these interests within the context of a grand jury proceeding.

### Grand Jury Proceedings

Grand juries originated in England and had their beginnings in common law. *See*

*Matter of Interim Report of Grand Jury for March Term of Seventh Judicial Circuit of Missouri,* 553 S.W.2d 479, 480 (Mo. banc 1977). In Missouri, grand juries are authorized by the Constitution and implemented by statute. Mo. Const. art. I, sec. 16; *see generally* chapter 540, RSMo 2000.[2] A grand jury is an inquiring body convened upon order of a judge having the authority to try felony cases and consisting of 12 citizens; the concurrence of 9 is required for the returning of a true bill of indictment. Sections 540.021 and 540.250. A grand jury "may make inquiry into and return indictments for all grades of crimes and shall make inquiry into all possible violations of the criminal laws as the court may direct." Section 540.031.

"Grand juries are an important part of the criminal justice system of this state and the people are entitled to have a grand jury convene and proceed under the appropriate statutes." *State ex rel. Woods v. Connett,* 525 S.W.2d 326, 330 (Mo. banc 1975). "Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law," *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), as the right of the public to "every man's evidence" is "particularly applicable to grand jury proceedings." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

■ To assist the grand jury in fulfilling its duty, a grand jury may "issue subpoenas and other process to bring witnesses to testify before the grand jury." Section 540.160. Despite the grand jury's wide latitude, a court may intervene in a grand jury proceeding to ensure the orderly procedure and proper functioning of the grand jury, *State ex rel. Hall v. Burney,* 229 Mo.App. 759, 84 S.W.2d 659 (1935), or

**2.** Unless otherwise noted, all statutory references are to RSMo 2000.

if a party asserts a recognized privilege that "provides a legitimate ground for refusing to comply with a grand jury subpoena," *In re Grand Jury Subpoena,* 463 F.Supp.2d 573, 575 (W.D.Va., 2006). For example, a grand jury, despite its unique nature, "may not itself violate a valid privilege, whether established by the Constitution, statute, or the common law." *Calandra,* 414 U.S. at 346, 94 S.Ct. 613.

## Applicable Limitations on Access to Work Product

■ While grand jury proceedings are governed by the United States and Missouri Constitutions, statutes, and case precedent, they are not governed by the Missouri Rules of Court.[3] 19.01 states that "Rules 19 to 26, inclusive, govern the procedure in all courts of this state having jurisdiction of criminal proceedings." Rule 25.01 controls discovery in such actions, stating that "Rules 25.01 through 25.16 apply to all criminal cases and discovery may commence upon the filing of the indictment or information." Because

grand jury proceedings do not take place following the filing of an indictment or information, these discovery rules are inapplicable.

In addition to the explicit language of the rules, an analysis of the nature of grand juries reiterates the need to distinguish between criminal proceedings and grand jury proceedings. Although grand juries investigate criminal conduct and the proceedings can result in a criminal indictment, grand jury proceedings differ significantly from criminal proceedings and, therefore, require different review as to the role of work-product.

■ Unlike criminal proceedings, "[c]ommon law and the statutes generally provide that grand jury proceedings are to be conducted in secret" except as modified by statute. *State v. McGee,* 757 S.W.2d 321, 325 (Mo.App.1988). Grand jurors and grand jury witnesses alike take oaths not to divulge information about the proceedings, and the person being investigated

3. This Court has recognized the work-product doctrine and incorporated it into rules applicable to both criminal and civil proceedings. Rule 56.01(6)(3), which applies to civil matters, codifies the work-product doctrine as defined in *Hickman* and prohibits discovery of documents or tangible items "prepared in anticipation of litigation" unless the party seeking the material demonstrates a "substantial need" for the materials and that the party "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley,* 898 S.W.2d 550, 552 (Mo. banc 1995). In addition, the work product doctrine offers complete protection of "intangible" work product in the form of "mental impressions, conclusions, opinions of legal theories or an attorney or other representative of a party concerning the litigation." *Id.*

Rule 25 provides more limited protection for work product and only prohibits disclosure of "legal research, or records, correspondence, reports, or memoranda to the extent

that they contain the opinions, theories, or conclusions of counsel" or his staff. Rule 25.10. The more limited protection of work-product within criminal proceedings is a function of the reciprocal rules of discovery: "As distinguished from civil procedure where the term 'work product' has been more literally treated as applying generally to the results of the efforts of attorneys or investigators, in criminal procedure the term has been very narrowly defined as applying only to 'opinions, theories or conclusions of defendant's attorney ... [and] communications between defendant his attorney.' " *Foote v. Hart,* 728 S.W.2d 295, 298 (Mo.App.1987). As civil and criminal proceedings serve distinctly different purposes, the public policy considerations impacting disclosure also vary. *See State v. Carter,* 641 S.W.2d 54, 58 (Mo. banc 1982) (holding that the fundamental purpose of a criminal trial is the fair ascertainment of the truth). The protection afforded work product also differs in light of these considerations.

may not be aware of the proceedings. *Id.* In contrast, in criminal proceedings, the defendant is aware of the charges, and the state and the defendant both are required, in response to a reasonable request, to disclose materials and information that are relevant and material to the case. *Foote v. Hart,* 728 S.W.2d 295, 298 (Mo.App.1987). These reciprocal rules of discovery have had a "profound impact" on the exclusionary rules of privilege. *State v. Carter,* 641 S.W.2d 54, 57 (Mo. banc 1982). No such reciprocity exists in grand jury proceedings due to their secret nature. Finally, in criminal proceedings, discovery commences after a finding of probable cause, whereas in grand jury proceedings no validity as to the crime being investigated has been established. *See United States v. R. Enterprises, Inc.,* 498 U.S. 292, 297, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991) (emphasizing that "the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists."). It is this secrecy, lack of reciprocity, and lack of establishment of probable cause that all distinguish grand jury proceedings from criminal proceedings.[4]

As to civil proceedings, Rule 41 states that "Rules 41 through 101 shall govern . . . civil actions." The writ at issue pertains to proceedings that may result in criminal charges, not a civil action. The trial court may administer the rules "within its discretion, but is limited by the parameters of the Rules." *State ex. rel Norman v. Dalton,* 872 S.W.2d 888, 890 (Mo. App.1994). By the express limitations of the rules, grand jury proceedings are not governed by them.[5] Furthermore, there are no statutes applicable to work product in grand jury proceedings, and as the rules do not govern work product in grand jury proceedings, the common law controls.

## Work Product in Grand Jury Proceedings

The common law, as recognized in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and its progeny, governs the proper scope of discovery of information under the work-product doctrine. In *State ex rel. Friedman v. Provaznik,* the grand jury sought to investigate criminal conduct within a law firm and issued a subpoena for client and billing records of the law firm. 668 S.W.2d at 78. The firm filed a motion to quash the subpoena, asserting that the attorney-client privilege and work-product doctrine protected the materials sought. *Id.* at 78, 80.

Although the subject of the subpoena differed from the case at bar, the analysis in *Friedman* is instructive. In *Friedman,* this Court defined the work-product doctrine as preventing an opposing party from discovering "materials collected by an adverse party's counsel in the course of preparation for possible litiga-

---

**4.** A prior case of this Court, *Johnson v. State,* 925 S.W.2d 834, 837 (Mo. banc 1996), cited Rule 26.02(c) in an analysis of a grand jury subpoena. In so doing, however, the Court did not analyze the applicability of the rule to grand jury subpoenas and also cited to other rules applicable to civil proceedings. *Id.* at 835–36. *Johnson's* utilization of rules applicable to both civil and criminal proceedings demonstrates the previous ambiguity surrounding grand jury proceedings.

**5.** Even when applicable, the rules expressly recognize that, "[i]f no procedure is specially provided by rule, the court having jurisdiction shall proceed in a manner consistent with judicial decisions or applicable statutes." Rule 19.04; Rule 41.04 (clarifying that in civil cases the court shall proceed in a manner consistent with statutes and precedent but not inconsistent with Rules 41 to 101.)

tion." *Id.* at 80 (quoting *Hickman,* 329 U.S. at 505, 67 S.Ct. 385). The work-product doctrine "customarily shields materials from discovery by an adverse party in a particular cause of action or investigation[.]" *Friedman,* 668 S.W.2d at 80. The doctrine is intended to "prevent a party from reaping the benefits of his opponent's labors." *Id.*

*Friedman* applied the work-product doctrine as defined in *Hickman. Hickman* held that, "[w]hen the desired material can be obtained elsewhere, the burden of showing such special circumstances [that would require disclosure] has not been met." 329 U.S. at 511–13, 67 S.Ct. 385. The Supreme Court in *Hickman* acknowledged that there would be situations in which discovery of work product would be justified. *Id.* at 511–12, 67 S.Ct. 385. The Supreme Court stated, however, that "the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Id.* at 512, 67 S.Ct. 385.

Following *Hickman,* the work-product doctrine "evolved into a two-pronged" approach "that consists of both tangible work product (consisting of trial preparation documents such as written statements, briefs, and attorney memoranda) and intangible work product (consisting of an attorney's mental impressions, conclusions, opinions, and legal theories—sometimes called opinion work product)." *State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley,* 898 S.W.2d 550, 552 (Mo. banc 1995). This Court noted with approval that "[t]he *Hickman* decision recognized that discovery of tangible work prod-

uct will inevitably disclose the attorney's mental impressions, conclusions, opinions, and legal theories, and, therefore, must be protected." *Id. Hickman* explicitly recognized the need to protect written statements, such as interviews. *Hickman,* 329 U.S. at 511, 67 S.Ct. 385. "The [*Hickman* ] decision also recognized, however, that, upon a showing of substantial need, the materials may be discoverable." *Atchison,* 898 S.W.2d at 552.

■ This Court went on to recognize that because intangible work product is not discoverable at all, the substantial need requirement applies only to tangible work product, which includes all documents and tangible items, such as interviews, statements, and memoranda, and does not apply to require disclosure of intangible work product, which includes anything intangible such as an attorney's opinions, thoughts, or theories. *See Atchison,* 898 S.W.2d at 553. Tangible work product, therefore, may be discoverable in Missouri upon a showing of substantial need and that the party requesting is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* at 552.

### Substantial Need for Transcript

■ Here, the grand jury seeks a written transcript of a witness statement obtained by counsel. This statement constitutes "material[ ] collected by an adverse party's counsel in the course of preparation for possible litigation," and, therefore, constitutes work product. *Hickman,* 329 U.S. at 505, 67 S.Ct. 385. Because it is a written record of the interview, it is tangible work product, which is subject to disclosure upon a showing of substantial need and undue hardship.[6]

The grand jury did not plead or prove *any* reasonable need for the statement.

---

**6.** Following an *in camera* review, the circuit

court determined that the witness statement

While the grand jury asserted that the statement by the older son was relevant and material to its investigation into the younger son's disappearance, there is no showing of substantial need or undue hardship. The police obtained a statement from the older son in 2003, the year of his brother's disappearance. Rogers then obtained a statement in 2007. The grand jury has not alleged or proved that it was unable to obtain a subsequent statement or procure testimony from the older son following 2003.

Because the transcript of the statement from the older son is work product and there was no showing of substantial need or undue hardship, the grand jury subpoena should be quashed. The writ is made absolute.

STITH, C.J., PRICE, TEITELMAN, RUSSELL and WOLFF, JJ., concur.

did not contain the identifiable theories of Rogers—in other words, because it was not intangible work product—therefore it was not work-product at all. This was an erroneous conclusion. This Court, however, need not consider whether Rogers is correct that opinion work product, as well as factual work product, was present in the witness statement as such an analysis has no bearing on the final result in this case.