IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
 STATE OF MISSOURI ex rel. )
 JOHN L. PUTNAM, M.D., )
 Appellant, )
 )
 v. ) WD84394
 )
 STATE BOARD OF ) FILED: December 7, 2021
 REGISTRATION FOR THE )
 HEALING ARTS AND THE )
 ADMINISTRATIVE HEARING )
 COMMISSION, )
 Respondents. )
 Appeal from the Circuit Court of Cole County
 The Honorable Jon E. Beetem, Judge
 Before Special Division: Mark D. Pfeiffer, P.J.,
 and Alok Ahuja and Thomas N. Chapman, JJ.
 The State Board of Registration for the Healing Arts has filed a complaint

with the Administrative Hearing Commission (the “Commission” or “AHC”), seeking
to discipline the medical license of Dr. John L. Putnam. Dr. Putnam filed a petition

for a writ of prohibition in the Circuit Court of Cole County, alleging that in the

administrative proceeding the Board was seeking discovery of medical records

protected by the physician-patient privilege, and of information which constituted

attorney work product. The circuit court refused to issue a permanent writ of

prohibition. Dr. Putnam appeals. We affirm in part and reverse in part.

 Factual Background
 On January 8, 2019, the Board filed a complaint with the AHC, seeking to
discipline Dr. Putnam’s medical license. The Board’s complaint alleged that Dr.
Putnam provided care and treatment to five patients which might be dangerous or

harmful; improperly prescribed controlled substances to those patients; and failed

to maintain complete records of the treatment he provided. In discovery before the

Commission, the Board sought production of the medical records associated with

Dr. Putnam’s treatment of the five patients. The Board also propounded

interrogatories which asked Dr. Putnam to disclose whether he had obtained any

oral or written statements from the relevant patients, including “the substance” of

any such statements; to identify all persons with knowledge of facts relevant to the

proceeding, including “the subject and substance of each such person’s knowledge”;

and to identify all fact witnesses whom Dr. Putnam intended to call at trial. Dr.

Putnam objected to producing the requested medical records under the physician-

patient privilege. He also objected to the relevant interrogatories on the basis of the

attorney-client privilege and the protection for attorney work product.

 The Board filed a motion to compel Dr. Putnam to provide the documents and

information it had requested. The Commission granted the Board’s motion to

compel. Dr. Putnam then filed a petition for a writ of prohibition in the circuit

court, seeking to prevent the AHC from compelling him “to disclose information

regarding his patients, privileged communications with his attorneys, or the work-
product of his attorneys.” The circuit court issued a preliminary writ of prohibition.

After receiving full briefing and oral argument from the parties, however, the court

ultimately denied Dr. Putnam’s request for a permanent writ, and quashed the

preliminary writ it had previously issued.

 Dr. Putnam appeals.1

 1 “[A]n appeal will lie ‘from the denial of a writ petition when a lower court has
issued a preliminary order . . . but then denies a permanent writ.’” Bartlett v. Mo. Dep’t of
Ins., 528 S.W.3d 911, 913 (Mo. 2017) (quoting U.S. Dep't of Veterans Affairs v. Boresi, 396
S.W.3d 356, 358 (Mo. 2013)).

 2
 Standard of Review
 Writs of prohibition are limited to the “fairly rare” situations
 where (1) the court or tribunal exceeded its personal or subject matter
 jurisdiction, (2) the court or tribunal lacked the power to act as it did,
 or (3) “absolute irreparable harm may come to a litigant if some spirit
 of justifiable relief is not made available[,]” or there is an issue of law
 that will likely escape review on appeal and cause considerable
 hardship or expense to the aggrieved party.
State ex rel. Rosenberg v. Jarrett, 233 S.W.3d 757, 760 (Mo. App. W.D. 2007)

(quoting State ex rel. Riverside Jt. Venture v. Mo. Gaming Comm'n, 969 S.W.2d

218, 221 (Mo. 1998)). “When a party has been directed to produce privileged

information, a writ of prohibition is an appropriate remedy because an appeal

cannot remedy the improper disclosure.” State ex rel. Malashock v. Jamison, 502

S.W.3d 618, 619 (Mo. 2016); accord State ex rel. Becker v. Wood, 611 S.W.3d 510,

513 (Mo. 2020).

 A writ of prohibition is discretionary. Rosenberg, 233 S.W.3d at 760.

Accordingly, we review the circuit court’s denial of writ relief for an abuse of

discretion, to the extent that Dr. Putnam preserved his appellate arguments in the

circuit court and before the Commission. Id. A circuit court abuses its discretion

when its “ruling is clearly against the logic of the circumstances then before the

court and is so unreasonable and arbitrary that it shocks the sense of justice and
indicates a lack of careful, deliberate consideration.” Hancock v. Shook, 100 S.W.3d

786, 795 (Mo. 2003). “If reasonable persons can differ as to the propriety of the trial

court's action, then it cannot be said that the trial court abused its discretion.” Id.

(citation omitted). “[T]he trial court necessarily abuses its discretion where its

ruling is based on an erroneous interpretation of the law.” Bohrn v. Klick, 276

S.W.3d 863, 865 (Mo. App. W.D. 2009).

 Dr. Putnam concedes that his first and second Points on appeal were not

preserved before the AHC or the circuit court, and are therefore subject to review
solely for plain error. Plain error review is “rarely . . . granted in civil cases.”

 3
Mayes v. Saint Luke’s Hosp., 430 S.W.3d 260, 269 (Mo. 2014) (citation omitted). We

will find plain error “only if there are substantial grounds for believing that the

[circuit] court committed error that is evident, obvious, and clear and where the

error resulted in manifest injustice or miscarriage of justice.” Id. (citation and

internal quotation marks omitted); Rule 84.13(c).

 Discussion
 Dr. Putnam raises five Points on appeal. First, he argues the circuit court

plainly erred in quashing the preliminary writ because § 334.097.62 requires the

Board to secure written authorization from a patient or issue a subpoena to obtain

the patient’s medical records – neither of which occurred here. Second, he argues

that the patient medical records the Board sought were not discoverable under

Supreme Court Rule 56.01(b)(1). Third, Dr. Putnam argues that compelling him to

produce patient medical records to the Board would require him to violate the

fiduciary duty of confidentiality which he owes to his patients, and would

potentially subject him to civil liability. In Points IV and V, Dr. Putnam argues

that he was justified in refusing to respond to certain interrogatories, because the

Board sought information protected by the attorney work product doctrine.

 We reject Dr. Putnam’s first three Points, which claim that the Board lacks

authority to obtain patient medical records from him through discovery. We

conclude, however, that the Board’s interrogatories improperly asked Dr. Putnam to

disclose the work product of his attorneys, when the interrogatories requested that

he disclose the “substance” of statements his legal representatives obtained during

their investigation and defense of the disciplinary proceeding. We accordingly

affirm the circuit court’s denial of a writ of prohibition in part, but reverse its

 2 Unless otherwise noted, statutory citations refer to the 2016 edition of the
Revised Statutes of Missouri, updated by the 2020 Cumulative Supplement.

 4
refusal to issue a writ precluding the Commission from compelling Dr. Putnam to

disclose attorney work product.

 I.
 Dr. Putnam’s first Point argues that the circuit court plainly erred in

quashing the preliminary writ because § 334.097.6 provides that “[t]he board shall

not obtain a patient medical record without written authorization from the patient

to obtain the medical record or the issuance of a subpoena for the patient medical

record.”

 Notwithstanding § 334.097.6, the circuit court found that the requested

patient records were discoverable under § 334.100.7. Section 334.100.7 states:

 In any investigation, hearing or other proceeding to determine a
 licensee's or applicant's fitness to practice, any record relating to any
 patient of the licensee or applicant shall be discoverable by the board
 and admissible into evidence, regardless of any statutory or common
 law privilege which such licensee, applicant, record custodian or
 patient might otherwise invoke. In addition, no such licensee,
 applicant, or record custodian may withhold records or testimony
 bearing upon a licensee's or applicant's fitness to practice on the
 ground of privilege between such licensee, applicant or record
 custodian and a patient.
 Dr. Putnam argues that § 334.100.7 must be read in concert with § 334.097.6,

and that, when the two statutes are considered together, the Board must secure a
patient’s written authorization or a subpoena to obtain medical records, even when

the Board seeks the records in the context of the disciplinary proceedings

contemplated by 334.100.7. We disagree.

 Section 334.097.6 does not govern the Board’s access to patient medical

records in the course of disciplinary proceedings. Section 334.097 addresses

physician recordkeeping generally. Thus, §§ 334.097.1 and .2 require that

physicians “maintain . . . adequate and complete patient record[s],” and specify the
specific information which must be retained, and for how long. Section 334.097.6

 5
then provides that, in general, the Board “shall not obtain a patient medical record

without written authorization from the patient . . . or the issuance of a subpoena.”

 Unlike § 334.097 (which deals with a physician’s general recordkeeping

obligations), § 334.100 specifically governs proceedings seeking to deny, revoke, or

suspend a physician’s license. Sections 334.100.1 to .6 detail the Board’s authority

to discipline a physician’s license, the various circumstances which constitute cause

for discipline, and the procedures under which administrative disciplinary

proceedings will be conducted. Although the physician-patient privilege may

generally shield a patient’s medical records from disclosure in litigation,3

§ 334.100.7 provides that, “[i]n any investigation, hearing or other proceeding to

determine a licensee's or applicant's fitness to practice,” patient medical records

“shall be discoverable by the board . . . , regardless of any statutory or common law

privilege which such licensee . . . or patient might otherwise invoke.” The statute

also provides that a licensee may not withhold such records from the Board “on the

ground of privilege between such licensee . . . and a patient.”

 There may be a conflict between § 334.097.6’s general requirement that the

Board have patient consent or a subpoena before obtaining patient medical records,

and § 334.100.7’s statement that such records “shall be discoverable” in disciplinary
proceedings notwithstanding any claim of privilege. But well-established rules of

statutory construction require that we give precedence to § 334.100.7 in this

context. “[T]he doctrine of in pari materia recognizes that statutes relating to the

same subject matter should be read together, but where one statute deals with the

subject in general terms and the other deals in a specific way, to the extent they

conflict, the specific statute prevails over the general statute.” State ex rel. Hillman

v. Beger, 566 S.W.3d 600, 606 (Mo. 2019) (quoting State ex rel. Taylor v. Russell,

 3 See § 491.060(5); Brandt v. Pelican, 856 S.W.2d 658, 661 (Mo. 1993).

 6
449 S.W.3d 380, 382 (Mo. 2014)). Section 334.100.7 is the more specific statute in

this context: it specifically addresses the discoverability of patient medical records

in physician disciplinary proceedings, as compared to the general recordkeeping

practices addressed in § 334.097.

 Under § 334.100.7, patient medical records “shall be discoverable” by the

Board in physician disciplinary proceedings (like the ongoing proceeding involving

Dr. Putnam’s license), notwithstanding the privilege which otherwise attaches to

such records. Dr. Putnam’s claim that the Board was required to secure patient

consent, or a subpoena, to obtain the requested records is meritless.

 Dr. Putnam contends that reading § 334.100.7 to permit discovery of patient

medical records is inconsistent with the protections provided to such records under

the federal Health Insurance Portability and Accountability Act of 1996, Pub. L.

104–191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.)

(“HIPAA”). We disagree. HIPAA and its implementing regulations “prohibit[ ]

health care providers from disclosing ‘protected health information,’ . . . unless

medical providers comply with a narrow list of . . . specifically enumerated

exception[s].” State ex rel. Proctor v. Messina, 320 S.W.3d 145, 150 (Mo. 2010). One

such exception permits “[a] covered entity [to] disclose protected health information
to a health oversight agency for oversight activities authorized by law, including . . .

licensure or disciplinary actions . . . ; or other activities necessary for appropriate

oversight of . . . [t]he health care system[.]” 45 C.F.R. § 164.512(d)(1)(i). The Board

of Registration for the Healing Arts qualifies as a “health oversight agency” under

the HIPAA regulations. See 45 C.F.R. § 164.501.

 The HIPAA regulations also provide that “[a] covered entity may disclose

protected health information in the course of any judicial or administrative

proceeding . . . [i]n response to an order of a court or administrative tribunal; or . . .
[i]n response to a subpoena, discovery request, or other lawful process,” so long as

 7
the disclosed information is covered by a “qualified protective order.” 45 C.F.R.

§ 164.512(e)(1)(i)-(ii). The “covered entity may . . . disclose protected health

information [under these exceptions] without the written authorization of the

individual . . . or the opportunity for the individual to agree or object . . . .” 45

C.F.R. § 164.512. The Board propounded discovery requests to Dr. Putnam seeking

the patient records, the AHC issued an order compelling their production, and the

circuit court found that the Commission had put a qualified protective order in

place.4 Despite Dr. Putnam’s contrary arguments, disclosure of the patient medical

records sought by the Board was fully consistent with HIPAA.

 We note that in its Brief, the Board contended that the HIPAA regulations

mandated Dr. Putnam’s disclosure of the patient records it sought. But those

regulations merely permitted disclosure – they did not require it. With respect to

the privacy of patient medical records, HIPAA represents a floor, not a ceiling. The

statute only preempts “any contrary provision of State law,” 42 U.S.C. § 1320d-

7(a)(1), and the implementing regulations make clear that preemption does not

apply where a “provision of State law relates to the privacy of individually

identifiable health information and is more stringent than a [HIPAA] standard,

requirement, or implementation specification.” 45 C.F.R. § 160.203(b); see Proctor,
320 S.W.3d at 148-49. Therefore, the fact that HIPAA does not prohibit the

 4 In the argument under his third Point, Dr. Putnam contends that the AHC
failed to put in place the “qualified protective order” required by the HIPAA regulations.
This argument was not included in Dr. Putnam’s Point Relied On, and we would be justified
in refusing to consider it for that reason alone. See, e.g., State v. Gibbons, 629 S.W.3d 60,
87 n.14 (Mo. App. W.D. 2021). In addition, Dr. Putnam has not included the protective
order entered by the AHC in the record on appeal – thereby making it impossible for this
Court to assess the adequacy of the protective order’s terms. This gap in the record
separately requires us to reject Dr. Putnam’s argument concerning the adequacy of the
AHC’s protective order. See, e.g., Deere v. Deere, 627 S.W.3d 604, 609 (Mo. App. W.D. 2021);
D.D.W. v. M.F.A., 594 S.W.3d 274, 276 n.4 (Mo. App. S.D. 2020).

 8
disclosure the Board sought is not decisive; we must nonetheless determine whether

any provision of Missouri law prevented discovery.

 Point I is denied.

 II.
 The Supreme Court’s Rules of Civil Procedure governing discovery are

generally applicable in contested proceedings before the AHC. See 1 C.S.R. 15-

3.420(1). In his second Point, Dr. Putnam argues that the circuit court plainly erred

in failing to follow Supreme Court Rule 56.01(b)(1), which specifies that “[p]arties

may obtain discovery regarding any matter, not privileged, that is relevant to the

subject matter involved in the pending action . . . .” (Emphasis added.)

 As discussed in § I above, the patient records at issue here are specifically

made discoverable by § 334.100.7, and the statute specifies that the physician-

patient privilege may not be invoked by a licensee to prevent the discovery of such

records. In these circumstances, Rule 56.01(b)(1) does not shield the records at

issue from discovery. Point II is denied.

 III.
 In Point III, Dr. Putnam argues that disclosure of the patient records would

violate his fiduciary obligation to protect the confidentiality of his patients’ medical
information, and thereby expose him to potential civil liability.

 In Brandt v. Medical Defense Associates, 856 S.W.2d 667 (Mo. 1993), the

Missouri Supreme Court held that “a physician has a fiduciary duty of

confidentiality not to disclose any medical information received in connection with

his treatment of the patient.” Id. at 670. This fiduciary duty is distinct from the

evidentiary physician-patient privilege created by § 491.050(5). See id. at 669-70.

Brandt held that, “[i]f such [patient health-care] information is disclosed under

circumstances where this duty of confidentiality has not been waived, the patient
has a cause of action for damages in tort against the physician.” Id. at 670.

 9
 Brandt recognized that the fiduciary duty of confidentiality is “not absolute,”

and “must give way if there is a stronger countervailing societal interest.” Id. at

671. Thus, in Brandt itself, the Court held that the physician’s fiduciary duty of

confidentiality was inapplicable where the patient affirmatively put his medical

condition at issue in litigation. Id. at 672-73. Moreover, Brandt recognized that the

General Assembly had created exceptions to the fiduciary duty of confidentiality, by

enacting a variety of statutes requiring or authorizing a physician to disclose

patient information in certain circumstances, and specifying that the physician

would face no liability for making the authorized disclosures. Id. at 670 (citing

statutes authorizing physicians to report patients treated for gunshot wounds;

intoxicated patients treated for injuries arising out of automobile accidents; children

who may have been exposed to controlled substances; and information requested by

the Department of Health for epidemiological studies). By recognizing these

statutory exceptions, Brandt itself recognized that the legislature could limit a

physician’s fiduciary duty of confidentiality where appropriate.

 Here, the General Assembly has declared in § 334.100.7 that, where a

physician is accused of committing acts which would justify disciplining the

physician’s license, the physician-patient privilege does not prevent the Board’s
discovery of patient medical records relevant to the disciplinary proceeding.

Physician disciplinary proceedings implicate important public interests: “The

primary purpose of the statutes authorizing the Board to discipline a physician's

license is to safeguard the public health and welfare.” Colyer v. State Bd. of

Registration for Healing Arts, 257 S.W.3d 139, 144 (Mo. App. W.D. 2008) (citation

omitted). Thus, by specifying that the physician-patient privilege cannot shield

relevant information from discovery in a physician disciplinary proceeding, the

General Assembly has declared that the interests of a patient in the confidentiality
of their medical records must give way to the “stronger countervailing societal

 10
interest” of protecting the public health and welfare. Brandt, 856 S.W.2d at 671.

Dr. Putnam’s fiduciary duty of confidentiality does not prevent him from producing

documents which are expressly made discoverable by § 334.100.7. See State Bd. of

Reg. for Healing Arts v. Vandivort, 23 S.W.3d 725, 727 & n.1 (Mo. App. W.D. 2000)

(dictum observing that § 334.100.7 “seems to undercut . . . significantly” a

physician’s argument that he could be subjected to civil liability for disclosing

patient medical records sought by the Board in a disciplinary investigation).

 Point III is denied.

 IV.
 In his fourth Point, Dr. Putnam argues that the Board’s Interrogatories

Number 14 and 15 violate the attorney work product doctrine. Interrogatories

Number 14 and 15 request that Dr. Putnam state whether he had obtained

statements from any of the affected patients, and that he identify persons having

knowledge of the relevant facts. Dr. Putnam concedes that such requests were

proper. The Board’s interrogatories also ask Dr. Putnam to relate the “substance”

of the patients’ oral statements and the witnesses’ knowledge, however. Dr.

Putnam contends that the request for the “substance” of a witnesses’ knowledge or

prior oral statements invades the work product of his attorneys. We agree.

 Interrogatories Number 14 and 15 provide:

 14. State whether you or anyone acting on your behalf has
 knowledge of any statements made by Patient(s) or by any persons
 purporting to be the servant, agent, or employee of Patient(s)
 pertaining to the matters alleged in the pleadings of this case. If your
 answer is in the affirmative, please state:
 a. The name and address of all persons having
 knowledge of such statement or statements.
 b. Whether such statements were written, recorded,
 or oral.
 c. For each oral statement, please state the name and
 address of the person or persons hearing such statements, the

 11
 name and address of the person making such statement[,] the
 substance thereof, and the place or places where each statement
 was made.
 15. Identify all persons with knowledge of any facts relating
 to the matters alleged in the pleadings in this case and state the subject
 and substance of each such person’s knowledge known to you.
(Emphasis added.)

 “The work product doctrine is a defense to pretrial discovery. . . . [It]

precludes discovery of the mental impressions, conclusions, opinions, or legal

theories, both tangible and intangible, created or commissioned by counsel in

preparation for possible litigation.” State ex rel. Malashock v. Jamison, 502 S.W.3d

618, 619-20 (Mo. 2016). “Work product consists of . . . material which reflects an

attorney’s efforts at investigating and preparing a case, including one’s pattern of

investigation, assembling of information, determination of the relevant facts,

preparation of legal theories, planning of strategy, and recording of mental

impressions.” State ex rel. Bd. of Pharmacy v. Otto, 866 S.W.2d 480, 483 (Mo. App.

W.D. 1993) (citation omitted).

 In State ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. O’Malley, 898 S.W.2d

550 (Mo. 1995), the Missouri Supreme Court held that the protection for attorney

work product prevented a plaintiff from propounding interrogatories which asked
the defendant to identify persons from whom statements had been obtained, and

the particulars of those statements.

 To the extent the above interrogatories seek any information
 regarding oral interviews of persons contacted, they seek information
 that is clearly protected as intangible work product. See Otto, 866
 S.W.2d at 483–84.
 As to written or recorded statements, we have no difficulty in
 understanding how the above interrogatories seek information that
 would, to some degree, reveal Santa Fe's attorney's mental
 impressions, conclusions, opinions, or legal theories. The broad
 interrogatories seek a schematic of the attorney's investigative process.
 In general, this schematic aides the other attorney not because it
 reveals facts relevant to the case, but because it reveals the

 12
 investigative process and relative weight attributed to certain
 witnesses' statements by the opposing side. The work product doctrine
 applies to protect the requested information.
898 S.W.2d at 553; see also id. at 554 (holding that interrogatory asking defendant

to identify “who, among the co-workers, [the defendant] has interviewed” sought

information which was “clearly protected as intangible work product”); State ex rel.

Hackler v. Dierker, 987 S.W.2d 337, 338 (Mo. App. E.D. 1998) (“interrogatories

requesting the names of witnesses from whom statements have been obtained”

improperly sought discovery of intangible attorney work product); Otto, 866 S.W.2d

at 483-84 (litigant cannot by interrogatory request a “detailed description of the

[opposing party’s] investigation,” the identity of each person the opponent contacted

and what the witnesses said, or a description of the documents prepared during the

investigation).

 State ex rel. Rogers v. Cohen, 262 S.W.3d 648 (Mo. 2008), addressed a grand

jury subpoena seeking “a written transcript of a witness statement obtained by

counsel.” Id. at 654. The Court held that the subpoena impermissibly invaded

counsel’s work product; it reasoned that “[t]his statement constitutes ‘material [ ]

collected by an adverse party's counsel in the course of preparation for possible

litigation,’ and, therefore, constitutes work product.” Id. (quoting Hickman v.
Taylor, 329 U.S. 495, 505 (1947)).

 Although O’Malley and Rogers hold that the substance of witness statements

obtained by counsel constitute protected attorney work product, the Board argues

that the work product doctrine is inapplicable, because § 334.100.7 authorizes the

Board to obtain discovery of “any record relating to any patient of the licensee . . . ,

regardless of any statutory or common law privilege which such licensee . . . might

otherwise invoke.” The short answer to the Board’s argument is that Interrogatory

Number 14.c does not seek the production of records, but instead ask Dr. Putnam to
describe “the substance” of oral statements provided by the patients. Section

 13
334.100.7 is inapplicable here. Further, although we need not definitively resolve

the issue, we are skeptical that § 334.100.7’s authorization for discovery of “any

record relating to any patient” was intended to apply to documents generated by a

physician’s legal representatives in the course of their investigation and defense of a

disciplinary proceeding. If the statute were read as broadly as the Board contends,

it potentially would authorize discovery of the entirety of an attorney’s file, since in

a disciplinary proceeding like this one, all of the attorney’s file arguably consists of

“record[s] relating to” the patient(s) the physician is accused of mistreating.

 Under the O’Malley and Rogers decisions, the Board was not entitled to

obtain through discovery “the substance” of any oral statements Dr. Putnam’s legal

representatives had obtained from the relevant patients in the course of their

investigation and defense of the disciplinary proceeding. The circuit court erred by

failing to issue a permanent writ of prohibition preventing the AHC from

compelling disclosure of “the substance” of such statements in response to the

Board’s Interrogatory Number 14.c.5

 In Interrogatory Number 15, the Board sought information concerning

“persons with knowledge of any facts relating to the matters alleged in the

pleadings.” Dr. Putnam does not object to the requirement that he identify persons
with factual knowledge; he objects only to Interrogatory Number 15’s request that

he disclose “the subject and substance of each such person’s knowledge known to

you.”

 The Board was entitled to discovery of the identities of persons with

knowledge of the facts, and the general subject matter of those persons’ knowledge.

Despite the protection for attorney work product, an interrogatory may request

 5 On appeal, Dr. Putnam challenges only the Board’s request for “the
substance” of any oral patient statements. Accordingly, we do not address the propriety of
the Board’s request for other information concerning patient statements.

 14
information on a “factual matter within the knowledge of the party interrogated or

his attorney,” even where the facts were “developed as the result of the party’s

investigation.” State ex rel. Hof v. Cloyd, 394 S.W.2d 408, 411 (Mo. 1965). Almost

sixty years ago, the Missouri Supreme Court rejected a litigant’s claim that it would

invade attorney work product to require her to disclose the identity of witnesses to

an accident, when those witnesses had been discovered by her attorneys during

their investigation. State ex rel. Pete Rhodes Supply Co. v. Crain, 373 S.W.2d 38, 44

(Mo. 1963).

 Missouri’s protection for attorney work product derives from and follows

federal precedent defining the scope of the work product immunity. Under federal

caselaw, it is well-established that a party may propound interrogatories asking an

opponent to identify persons with knowledge of relevant facts. See, e.g., Tracy v.

NVR, Inc., 250 F.R.D. 130, 132 (W.D.N.Y. 2008) (“The better reasoned decisions . . .

are those that draw a distinction between discovery requests that seek the

identification of persons with knowledge about the claims or defenses (or other

relevant issues) – requests that are plainly permissible – and those that seek the

identification of persons who have been contacted or interviewed by counsel

concerning the case.”; collecting cases); In re Theragenics Corp. Secs. Litig., 205
F.R.D. 631, 634 (N.D. Ga. 2002) (“Numerous courts since Hickman v. Taylor, 329

U.S. 495, 511 (1947), have recognized that names and addresses of witnesses

interviewed by counsel who have knowledge of the facts alleged in the complaint are

not protected from disclosure by the work product doctrine.”); Commonwealth of

Mass. v. First Nat’l Supermarkets, Inc., 112 F.R.D. 149, 152 (D. Mass. 1986).

Indeed, the Federal Rules of Civil Procedure now require litigants to disclose,

without a discovery request, “the name . . . of each individual likely to have

discoverable information – along with the subjects of that information – that the

 15
disclosing party may use to support its claims or defenses.” Fed. R. Civ. P.

26(a)(1)(A)(i).

 Therefore, Interrogatory Number 15 was not objectionable for requesting that

Dr. Putnam disclose the identity of “persons with knowledge of any facts relating to

the matters alleged in the pleadings,” and the general subject matter of such

persons’ knowledge. We conclude, however, that the Interrogatory went too far

when it asked Dr. Putnam to “state the . . . substance of each such person’s

knowledge known to you.” Requiring Dr. Putnam to recite “the substance” of fact

witnesses’ knowledge, beyond a description of the subject matter of their knowledge,

would effectively require that Dr. Putnam summarize any interviews his legal

representatives had conducted of such persons, or any statements obtained from

them – much like the privileged matter requested by Interrogatory Number 14.c.

 We therefore conclude that the circuit court abused its discretion by refusing

to issue a writ of prohibition prohibiting the AHC from compelling Dr. Putnam to

disclose the substance of any oral statements he had obtained from the relevant

patients, or the substance of any fact witnesses’ relevant knowledge.

 V.
 Dr. Putnam’s final Point challenges the Board’s Interrogatory Number 16,

which asks him to “identify all fact witnesses that [he] intends to call at the trial of

this action.” Dr. Putnam acknowledges that he can be required to disclose his

expected trial witnesses “at some point, immediately prior to the hearing on the

merits.” He argues, however, that it violates the attorney work product doctrine to

require him to disclose his intended trial witnesses early in the discovery process.

 Dr. Putnam did not preserve this timing argument either before the AHC, or

in the circuit court. He did not raise this timing issue in his responses and

objections to the Board’s interrogatories, or in his suggestions in opposition to the
Board’s motion to compel. Further, Dr. Putnam did not argue that discovery of his

 16
intended trial witnesses was fatally premature either in his petition for a writ of

prohibition filed in the circuit court, or in his suggestions in support of the petition.

 Where an appellant does not argue a specific theory or claim of error prior to

appeal, that error is not preserved. See, e.g., City of Aurora v. Spectra Commc’ns

Grp., LLC, 592 S.W.3d 764, 789-90 (Mo. 2019). We will not review this unpreserved

claim, particularly where Dr. Putnam does not request plain-error review. Point V

is denied.

 Conclusion

 The judgment of the circuit court is affirmed in part and reversed in part.

Pursuant to Rule 84.14, we enter the judgment the circuit court should have

entered. We issue a permanent writ of prohibition prohibiting the Administrative

Hearing Commission from compelling Dr. Putnam to disclose, in response to the

Board’s Interrogatories Number 14.c and 15, the substance of any oral statements

his legal representatives obtained from the patients at issue, or the substance of

any fact witnesses’ knowledge learned through counsel’s investigation. In all other

respects, Dr. Putnam's petition for a writ of prohibition is denied.

 Alok Ahuja, Judge
All concur.

 17