

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD86572** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **SEPTEMBER 9, 2025** |
| **JOHN A. FRAZIER,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Charles H. McKenzie, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

John A. Frazier appeals the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), convicting him, following a jury trial, of one count of murder in the first degree, section 565.020,[1] and one count of armed criminal action, section 571.015.  Frazier was sentenced to life in prison without the possibility of parole and for twenty years' imprisonment on the respective counts.  On appeal, Frazier claims that the trial court erred in:  (1) finding prosecutor notes were work product and not discoverable witness statements (Point I); and (2) not granting a mistrial due to the State's late

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) as updated by supplement.

disclosure or non-disclosure of discoverable material (Point III). Frazier's Point II does not allege any trial court error but alleges that the "prosecution erred in engaging in prosecutorial misconduct." We affirm the judgment of the trial court.

**Factual and Procedural Background**

The facts, in the light most favorable to the judgment, are as follows. Frazier and his ex-wife ("Victim")[2] had two sons together, who were ages six and eight. Following their divorce, Frazier and Victim shared custody of their children, who were supposed to spend alternating weeks with Frazier and Victim. However, at the end of the school year in May of 2017, Frazier picked the children up from school when they were supposed to take the school bus to Victim's home. From that time forward, the children were not returned to Victim, and they were not allowed to see her or talk to her, although they asked Frazier to return them to Victim's house.

Victim asked Frazier via text message to return the children to her by June 5, because they were due to start summer school. She also asked Frazier to let her speak to the children, but Frazier did not respond to Victim's texts. On June 9, and June 11, 2017, Victim again texted Frazier asking to speak to the children and asking for their return; Frazier responded as though he were going to allow Victim to pick the children up the next morning, but then responded pretending that Victim was texting the wrong number. Victim came to Frazier's house several times to try to see or talk to the children. Frazier

---

[2] Pursuant to Missouri Supreme Court Operating Rule 2.02(c)(3), we do not list the names of individuals and witnesses other than parties.

2

would not allow the children to see her or let her inside, but he would sometimes watch her on his security cameras and laugh at her.

On July 24, 2017, Victim filed a "Family Access Motion" in the Jackson County Circuit Court. On August 2, 2017, at approximately 2:33 p.m., Victim again went to Frazier's house to attempt to take the children back to her home. Victim was on the phone with two of her sisters, and she knocked on the door repeatedly, calling her children's names. Frazier was not home; he had left his ten-year-old daughter from another relationship in charge of his and Victim's children. Frazier had told his daughter not to open the door if anyone came to the house. After about ten minutes, Victim left a note inside the storm door which read, "Jay, can you please bring me the boys back, they need shots and they have to meet their teachers before school so they can get their stuff. I know they miss me, so please bring them home or I can pick them up."

At about 2:50 p.m., while Victim was still present and was still on her phone with her sisters, home surveillance footage shows Frazier returning home. He had a gun in his hand as he exited his vehicle. One of Victim's sisters heard Victim say to Frazier, "Oh, so you going to pull a gun on me?" The sister asked Victim if she should call the police, and Victim answered no and ended the call with that sister. Victim's other sister, who was still on the phone, heard Victim arguing with Frazier and Frazier telling Victim to come into his house; Victim refused to go into Frazier's house. At 2:51 p.m., Frazier is seen on his surveillance footage walking toward the house. In the footage, Victim does not appear to have a gun. As Frazier is walking toward the house, the security footage ends abruptly.

3

Frazier came into the house and "peeped his head" into the bedroom where the children were, telling them not to come out of the bedroom. At 2:54 p.m., Frazier shot Victim multiple times, killing her. The children heard noises they later realized had been gunshots. Victim's sister also heard the shots over the phone. Frazier called the police to report the shooting at 2:57 p.m., and the first officers arrived a few minutes later.

Victim's body was found outside the house; a .380 caliber firearm registered to Frazier but different from the one with which Frazier shot Victim was found near her body. The gun found near Victim had six rounds in the magazine, but no round in the chamber, and the gun's safety was activated. Police found a nine-millimeter handgun inside the house, which Frazier admitted he had used to shoot Victim. Ammunition matching both the nine-millimeter firearm and the .380 caliber firearm were located inside Frazier's home.

At Frazier's trial, the State's theory of the case was that Frazier turned off his security cameras before he shot Victim, which was evidence of premeditation, and then he planted one of his firearms near Victim's hand, getting her blood on it, so that he could argue self-defense. Frazier's theory of the case was that Victim had retrieved a gun either from her car or from inside her waistband, had entered Frazier's house, and had pointed a gun at him, and Frazier shot Victim's hand in self-defense, and as he shot her, she fell out of the house and onto her face. The children testified that they had not ever seen Victim with a gun but that Frazier carried a gun regularly.

During the testimony of one the first officers who arrived on the scene ("Sergeant"), Sergeant referred to "what looked like a video system in one of the closet areas of the master bedroom that had just been kind of pulled off of the shelf." The prosecutor questioning Sergeant asked him about some photographs from the scene, and Frazier's counsel interrupted and told the trial court that there was an apparent violation of discovery Rule 25.03 because counsel was unaware that Sergeant had any independent recollection of the surveillance system recorder apparently having been moved. Frazier did not depose Sergeant, even though he was the first law enforcement officer to enter the house but did not write a report, and even though Frazier's counsel believed that police had inappropriately manipulated the scene, and possibly manipulated evidence, and even though he knew that the State's theory of the case was that Frazier had purposely unplugged the surveillance system. The trial court informed both counsel, out of the hearing of the jury, that any comment that the equipment had been moved would lack foundation because Sergeant had not been in the house before and was "coming upon it for the first time."

Frazier's counsel nevertheless demanded to know why he was unaware that Sergeant had thought that anything had been moved and why no interview notes for this witness had been provided to him. The prosecutor answered that he had not taken any notes while preparing Sergeant to testify at trial but that a former prosecutor who prepared witnesses for an earlier trial setting, which had been continued, had taken notes and that those notes might be in the file. The former prosecutor had since passed away. During a break, the State voluntarily provided Frazier's counsel with three-and-a-half

pages of the late prosecutor's handwritten notes from her trial preparation of Sergeant, while maintaining that they were work product in that they showed her "theory of the case" and were made in preparation for the earlier trial setting. The trial court reviewed Rule 25.03[3] and Rule 25.10 with the attorneys and noted a distinction between "everything that [Sergeant] told this person or is it that which was important to their consideration for what they want to talk to them about?" The court also noted that the handwriting in the notes was difficult to decipher. After much discussion and argument, the trial court decided that the handwritten notes were work product and therefore not discoverable but that he would not allow Sergeant to testify about his impressions of the surveillance equipment consistent with his earlier ruling, and he admonished the jury to disregard any such testimony.

The trial court also, at the request of Frazier's counsel, reviewed the remainder of the late prosecutor's handwritten notes regarding trial preparation with other witnesses and ruled that they, too, appeared to be, where legible, "akin to the notes that have already been produced from [Sergeant]," and thus work product. However, the trial court qualified his ruling by analogizing "the civil rules where [courts] see a lot of work product," and noting that the privilege would not categorically prohibit discovery if the other party showed a "substantial need" for them and an inability to obtain the information by other means.

---

[3] Rule references are to the Missouri Supreme Court Rules (2023), the version applicable at Frazier's criminal trial, unless otherwise noted.

6

The jury found Frazier guilty of murder in the first degree and armed criminal action, and Frazier was sentenced to life in prison without the possibility of parole and for twenty years' imprisonment on the respective counts. This appeal follows.

## Standard of Review

A trial court's ruling on a discovery issue is typically reviewed for an abuse of discretion. *State v. Zuroweste*, 570 S.W.3d 51, 56 (Mo. banc 2019). Even where a discovery violation has occurred, "a trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *Id.* (quotation omitted). Errors not specifically alleged in a motion for new trial, and thus not preserved, may be reviewed, at the appellate court's discretion, for plain error only. *State v. Stanley*, 609 S.W.3d 903, 909 (Mo. App. W.D. 2020). Plain error will be found only where there has been manifest injustice or a miscarriage of justice resulting from the trial court's evident, obvious, and clear error. *Id.*

## Analysis

Frazier raises three points on appeal, and all concern the same evidentiary issue. His first point on appeal is that the trial court erred in finding the late prosecutor's notes made in preparation for trial were attorney work product and not subject to discovery because the trial court "relied on the rules of civil procedure and did not read the rules of criminal procedure harmoniously." We disagree.

Frazier argues in his brief that this issue was preserved because it was raised at trial and included in his motion for new trial. The motion for new trial alleged that the State "intentionally with[eld] and/or fail[ed] to disclose to the defense, numerous emails

7

and other communications with all the State's endorsed witnesses, both lay and expert, under the improper guise of 'attorney work product.'" Specifically, Frazier alleges that the State failed to disclose "email communications" from a crime lab expert and from other state witnesses. Neither the late prosecutor nor her notes that were the subject of the *in camera* review and the lengthy argument during the trial are mentioned in the motion. Moreover, the notes at issue were not "emails [or] other communications" with endorsed State witnesses. They were clearly written for the late prosecutor's own use, based on their content and the fact they are illegible in many places. Because the motion for new trial does not specifically allege error in the trial court's ruling that the late prosecutor's handwritten notes were work product, the issue is not preserved, and may be reviewed only for plain error. *See Stanley*, 609 S.W.3d at 909.

We first examine Frazier's allegation that the trial court "relied on the rules of civil procedure" and failed to read them harmoniously with the rules of criminal procedure. This is refuted by the record. Although the trial court mentioned the civil rules generally, stating that courts see more discovery disputes related to work product in a civil context, he clearly decided the issue according to the applicable criminal rules. The court read portions of Rules 25.03 and 25.10 aloud and waited for counsel to read along with him as he was discussing the matter of the late prosecutor's notes with the attorneys and deciding whether the notes constituted a witness statement or whether they were "in the nature of work product."

8

Rule 25.03(b)(2) requires the state to provide to a defendant, upon written request, "[t]he names and last known addresses of persons whom the state intends to call as witnesses . . . at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements." However, the Supreme Court rule specifically exempts from disclosure "[l]egal research, or records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of counsel for the state or members of the state's legal or investigative staff". Rule 25.10. "The rules of criminal discovery exist to eliminate surprise by allowing both sides to know the witnesses and evidence to be introduced at trial." *State v. Loper*, 609 S.W.3d 725, 740 (Mo. banc 2020) (internal quotation omitted). However, the work product exception "comes from the need for counsel to work with a degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *State ex rel. Bailey v. Cox*, 690 S.W.3d 530, 534 (Mo. App. S.D. 2024) (internal quotation omitted). "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital." *State ex rel. Rogers v. Cohen*, 262 S.W.3d 648, 650 (Mo. banc 2008), *quoting United States v. Nobles*, 422 U.S. 225, 238 (1975). The "interests of society and [of] the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.*, *quoting Nobles*, 422 U.S. at 238. "The prosecution is not obliged to share its trial brief with the defense." *State v. Stuckey*, 680 S.W.2d 931, 936-37 (Mo. banc 1984).

9

The trial court reviewed not only the several pages of notes the late prosecutor took preparing Sergeant for trial, which the State voluntarily provided to the defense, but it also reviewed, *in camera*, the notes she took preparing several other witnesses. This Court has also reviewed those notes, which were filed under seal. The notes appear to roughly outline the questions she might ask the witnesses at trial and their expected answers. The notes for some of the witnesses also include whether she definitely planned to call them and when. These notes thus appear to represent the late prosecutor's mental impressions and strategies. We do not find error with the trial court's conclusion that the notes in question were work product not subject to discovery.

Moreover, because we are reviewing only for plain error, we would have to find a manifest injustice or miscarriage of justice to warrant reversal. We see none. As the trial court pointed out, Frazier did not depose Sergeant, even though he knew that Sergeant was the first officer to enter the house after the shooting, and even though Frazier's counsel believed and implied at trial that law enforcement may have manipulated the surveillance equipment and other evidence at the scene. And the "surprise" item of evidence, which was Sergeant's impression that part of the surveillance equipment had been moved before he arrived, was excluded from evidence by the trial court, not only to prevent unfair surprise, but because the trial court found that Sergeant's testimony lacked foundation to support such an opinion because he had not seen the equipment prior to the shooting. The trial court admonished the jury to disregard any testimony "regarding the condition of the recording device or the cords leading to that device." And Frazier points to no other testimony which came as a surprise during the trial that disclosure of the late

10

prosecutor's notes might have eliminated. Indeed, this Court's review reveals that the notes subject to the trial court's ruling, to the extent they were legible, were consistent with the evidence presented at trial. Accordingly, we find no manifest injustice or miscarriage of justice.

Point I is denied.

Frazier's second point alleges no trial court error. Rather, it alleges that "[t]he *prosecution* erred in engaging in prosecutorial misconduct . . . ." Rule 84.04(d)(A) requires that points relied on "[i]dentify *the trial court ruling or action* that the appellant challenges." (emphasis added). As such, Frazier's point II is not cognizable on appeal.

Point II is denied.

Frazier's third point on appeal is that the trial court erred in denying his motion for mistrial, "in that a continuance request would not have remedied the harm of a late- and non-disclosure of discoverable material, and a mistrial was the only option available to remedy the harm of a late- and non-disclosure of discoverable material." Although we find no error in the trial court's ruling that the late prosecutor's notes were non-discoverable work product, even if the trial court had found a discovery violation, "the trial court . . . has discretion in selecting an appropriate remedy." *State v. Wright*, 688 S.W.3d 94, 97 (Mo. App. E.D. 2024). "A mistrial is a drastic remedy, granted only in extraordinary circumstances." *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49 (Mo. banc 2006). The trial court found no such extraordinary circumstances. Furthermore, the Victim's death occurred and the felony complaint was filed in August of 2017, and the trial occurred in November of 2023. Frazier had ample opportunity to interview or

11

depose all of the witnesses, all of whose names had been properly disclosed by the State. We find no information in the notes that was improperly undisclosed or was otherwise hidden from Frazier by the State. The trial court did not err in concluding that a mistrial was not warranted in this case.

Point III is denied.

## Conclusion

For all of the above-stated reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

12